# THE HARRISBURG.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued April 7, 1886. — Decided November 15, 1886.

In the absence of an act of Congress or a statute of a State giving a right of action therefor, a suit in admiralty cannot be maintained in the courts of the United States to recover damages for the death of a human being on the high seas, or on waters navigable from the sea, which is caused by negligence.

If a suit *in rem* can be maintained in admiralty against an offending vessel for the recovery of damages for the death of a human being on the high seas, or on waters navigable from the sea, which is caused by negligence, when an action at law is given therefor by statute in the State where the wrong was done or where the vessel belonged, (which is not decided,) it must be commenced within the period prescribed by the State statute for the beginning of process there; the time within which the suit should be commenced operating as a limitation of the liability created by statute, and not of the remedy only.

The following is the case, as stated by the court.

This is a suit *in rem* begun in the District Court of the United States for the Eastern District of Pennsylvania, on the 25th of February, 1882, against the Steamer Harrisburg, by the widow and child of Silas E. Rickards, deceased, to recover damages for his death caused by the negligence of the steamer in a collision with the schooner Marietta Tilton, on the 16th of May, 1877, about one hundred yards from the Cross Rip Light Ship, in a sound of the sea embraced between the coast of Massachusetts and the Islands of Martha's Vineyard and Nantucket, parts of the State of Massachusetts. The steamer was engaged at the time of the collision in the coasting trade, and belonged to the port of Philadelphia, where she

was duly enrolled according to the laws of the United States. The deceased was first officer of the schooner, and a resident of Delaware, where his widow and child also resided when the suit was begun.

The statutes of Pennsylvania in force at the time of the collision provided that, "whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured, during his or her life," "the husband, widow, children, or parents of the deceased, and no other relative," "may maintain an action for and recover damages for the death thus occasioned." "The action shall be brought within one year after the death, and not thereafter." Brightly's Purdon's Dig., 11th ed., 1267, §§ 3, 4, 5; Act of April 15, 1851, § 18; Act of April 6, 1855, §§ 1, 2.

By a statute of Massachusetts relating to railroad corporations, it was provided that "if, by reason of the negligence or carelessness of a corporation, or of the unfitness or gross negligence of its servants or agents while engaged in its business, the life of any person, being in the exercise of due diligence, . . . is lost, the corporation shall be punished by a fine not exceeding five thousand nor less than five hundred dollars, to be recovered by indictment and paid to the executor or administrator for the use of the widow and children." . . . "Indictments against corporations for loss of life shall be prosecuted within one year from the injury causing the death." Mass. Gen. Stats. 1860, c. 63, §§ 97–99; Stat. 1874, c. 372, § 163.

No innocent parties had acquired rights to or in the steamer between the date of the collision and the bringing of the suit.

Upon this state of facts the Circuit Court gave judgment against the steamer in the sum of $5100, for the following reasons:

"1. In the admiralty courts of the United States the death of a human being upon the high seas or waters navigable from the sea, caused by negligence, may be complained of as an injury, and the wrong redressed under the general maritime law.

"2. The right of the libellants does not depend upon the

statute law of either the States of Massachusetts or Pennsylvania, and the limitation of one year in the statutes of these States does not bar this proceeding.

" 3. Although an action in the State courts of either Massachusetts or Pennsylvania would be barred by the limitation expressed in the statutes of those States, the admiralty is not bound thereby, and in this case will not follow the period of limitation therein provided and prescribed. The drowning complained of was caused by the improper navigation, negligence, and fault of the said steamer, producing the collision aforesaid, and the libellants are entitled to recover.

" 4. As there are no innocent rights to be affected by the present proceedings, and no inconvenience will result to the respondents from the delay attending it, the action, if not governed by the statutes aforesaid, is not barred by the libellant's laches." 15 Fed. Rep. 610.

From that decree this appeal was taken.

*Mr. Thomas Hart, Jr.,* for appellant.

*Mr. Henry Flanders* for appellees.

It is not controverted by counsel for appellant that a marine tort is within admiralty jurisdiction; or that one who suffers loss by it is entitled to compensation: it is only denied that if the injury causes death, the cause of action survives in admiralty to the widow and children. This contention is supposed to be founded on the common law. But the common law rule grew out of the feudal system, and is founded on the idea that the private wrong is merged in the public offence. Nevertheless, even the common law did not wholly deny redress to the widow and child. It allowed an appeal of murder, which was not abolished until 1818, 59. Geo. III. c. 46, § 1. *Ex parte Gordon,* 104 U. S. 515 is understood to be an intimation to the bar that, as the common law rule has been rejected by nearly all enlightened states, it will be rejected by this court when opportunity offers. Lord Campbell questioned the common law doctrine when it was ruled by Lord Ellenborough in *Baker* v. *Bolton,* 1 Camp. 493. And see 9 & 10 Vict. c. 93.

About the same time the Scotch courts in *Drummond* or *Brown* v. *McGregor*, Fac. Coll. 1812–1814, 232, in an action brought by the widow and children of a person killed while travelling on the top of a long coach, which was overturned by a post-chaise, found the proprietors of the two vehicles liable conjointly to the widow in the sum of £200, and to each child in the sum of £130. The case was affirmed on appeal, on the authority of *Black* v. *Cadell*, decided in 1804. And in *Patterson* v. *Wallace*, 1 Macqueen, 748, it was not controverted that recovery could be had by a widow and children for loss sustained by the death of the husband and father.

International Law is in accord with this doctrine. (*a*) Grotius says: "He that kills a man unjustly is bound to physicians and surgeons, if any be made use of, and to make such reparation to those whom the deceased person was obliged *in duty* to maintain, such as parents, wife, and children, as the hope of that maintenance (regard being had to the age of the deceased) amounts to." Book 2, c. 17. (*b*) Rutherford, in his "Institutes on Natural Law," in remarking upon the supposed distinction between the life of a freeman and a slave, says: "If we observe that the life of the slave can no otherwise be looked upon as the master's property, than as he had an interest in it, we shall find that there is no reason for this distinction, since as far as the relations of a free man had an interest in his life, the person who murdered him is obliged to make them reparation. So that in either case, in settling the damages, the life of the deceased is estimated according to the interest which those who survive him might have in it." Book 1, c. 17, § 9. (*c*) Domat, in his work on the Civil Law, says: "If that which has been thrown out causes the death of a person, the person who did it . . . will be liable to make good the damage that is done." Book 11, Title VIII., § 1, Art. IV. (*d*) Puffendorf says: "The unjust slayer was obliged to defray the charges of physicians and chirurgeons, and to give to those persons whom the deceased was, by a full and perfect *duty*, bound to maintain, as wife, children, and parents, so much as the hope of their maintenance shall be valued at." Law of Nature, Book 3, c. 1, § 7. (*e*) And Bell, in his great

work entitled, "Principles of the Law of Scotland," § 2029, says: "The law takes cognizance of the loss and suffering of the family of a person killed, and gives assythment, both as indemnification and as *solatium*. This was formerly taxed by the Barons of Exchequer, but in more modern times it is matter for the jurisdiction of the Court of Session. . . . The right of action is with the wife and family of the deceased; the division being like that of the goods in communion."

The decisions of the admiralty courts of the United States are in accord with these principles. *The Sea Gull*, Chase's Dec. 145; *The Towanda*, 34 Leg. Int. 394; *The E. B. Ward, Jr.* 17 Fed. Rep. 456; *The David Reeves*, 5 Hughes, 89; *The Charles Morgan*, 2 Flippin, 274; *The Sylvan Glen*, 5 Fed. Rep. 335; *The Manhasset*, 18 Fed. Rep. 918.

The case of *Hubgh* v. *New Orleans & Carollton Railroad*, 6 La. Ann. 495; *S. C.* 54 Am. Dec. 565, and the case of *Herman* v. *New Orleans & Carollton Railroad*, 11 La. Ann. 5, also require a passing comment. The action in each case was based on Article 2294 of the Louisiana Civil Code, and the decision turned on the construction and interpretation of that article. The article was copied from the Code Napoléon, and was identical with the corresponding article in that code. The French *Cour de Cassation* had held that it gave redress to the personal representatives of a deceased for the wrongful loss of his life. The court in *Hubgh* v. *New Orleans & Carollton Railroad* held otherwise. The question was again discussed in *Hermann* v. *New Orleans & Carollton Railroad*, and in this, as in the former case, there was a great parade of authorities "of learned length and thundering sound," but on the principle of *stare decisis* the prior decision was maintained. The court, however, said: "Were the question *res nova*, we should feel great difficulty in arriving at a satisfactory conclusion." But whether the *Cour de Cassation*, or the Louisiana Court was right, or whether, in the discussion Partida or Pothier was to be considered the better authority, is not important. The error of the court was corrected by the wisdom of the Legislature, and the local law of Louisiana was put in harmony with the law of admiralty.

The State statutes of limitation are not applicable to proceedings in admiralty. The result of the authorities is stated by this court in *The Key City*, 14 Wall. 660.

MR. CHIEF JUSTICE WAITE, after making the foregoing statement of the case, delivered the opinion of the court.

The question to be decided presents itself in three aspects, which may be stated as follows:

1. Can a suit in admiralty be maintained in the courts of the United States to recover damages for the death of a human being on the high seas, or waters navigable from the sea, caused by negligence, in the absence of an act of Congress, or a statute of a State, giving a right of action therefor?

2. If not, can a suit *in rem* be maintained in admiralty against an offending vessel for the recovery of such damages when an action at law has been given therefor by statute in the State where the wrong was done, or where the vessel belonged?

3. If it can, will the admiralty courts permit such a recovery in a suit begun nearly five years after the death, when the statute which gives the right of action provides that the suit shall be brought within one year?

It was held by this court, on full consideration, in *Insurance Company* v. *Brame*, 95 U. S. 756, "that by the common law no civil action lies for an injury which results in death." See also *Dennick* v. *Railroad Co.*, 103 U. S. 11, 21. Such also is the judgment of the English courts, where an action of the kind could not be maintained until Lord Campbell's Act, 9 and 10 Vict. c. 93. It was so recited in that act, and so said by Lord Blackburn in *Seward* v. *The Vera Cruz*, 10 App. Cas. 59, decided by the House of Lords in 1884. Many of the cases bearing on this question are cited in the opinion in *Insurance Co.* v. *Brame*. Others will be found referred to in an elaborate note to *Carey* v. *Berkshire Railroad*, 1 Cush. 475, in 48 Am. Dec. 616, 633. The only American cases in the common law courts against the rule, to which our attention has been called, are, *Cross* v. *Guthery*, 2 Root, 90; *S. C.* 1 Am. Dec. 61; *Ford*

v. *Monroe,* 20 Wend. 210; *James* v. *Christy,* 18 Missouri, 162; and *Sullivan* v. *Union Pacific Railroad,* 3 Dillon, 334. *Cross* v. *Guthery,* a Connecticut case, was decided in 1794, and cannot be reconciled with *Goodsell* v. *Hartford & New Haven Railroad,* 33 Conn. 55, where it is said: "It is a singular fact, that by the common law the greatest injury which one man can inflict on another, the taking of his life, is without a private remedy." *Ford* v. *Munroe,* a New York case, was substantially overruled by the Court of Appeals of that State in *Green* v. *Hudson River Railroad,* 2 Keyes, 294; and *Sullivan* v. *Union Pacific Railroad,* decided in 1874 by the Circuit Court of the United States for the District of Nebraska, is directly in conflict with *Insurance Co.* v. *Brame,* decided here in 1878.

We know of no English case in which it has been authoritatively decided that the rule in admiralty differs at all in this particular from that at common law. Indeed, in *The Vera Cruz, supra,* it was decided that even since Lord Campbell's Act a suit *in rem* could not be maintained for such a wrong. Opinions were delivered in that case by the Lord Chancellor (Selborne), Lord Blackburn, and Lord Watson. In each of these opinions it was assumed that no such action would lie without the statute, and the only question discussed was whether the statute had changed the rule.

In view, then, of the fact that in England, the source of our system of law, and from a very early period one of the principal maritime nations of the world, no suit in admiralty can be maintained for the redress of such a wrong, we proceed to inquire whether, under the general maritime law as administered in the courts of the United States, a contrary rule has been or ought to be established.

In *Plummer* v. *Webb,* 1 Ware, 75, decided in 1825, Judge Ware held, in the District Court of the United States for the District of Maine, in an admiralty suit *in personam,* that "the ancient doctrine of the common law, founded on the principles of the feudal system, that a private wrong is merged in a felony, is not applicable to the civil polity of this country, and has not been adopted in this State" (Maine), and that "a libel may

be maintained by a father, in the admiralty, for consequential damages resulting from an assault and battery of his minor child," "after the death of the child, though the death was occasioned by the severity of the battery;" but he suit was dismissed, because upon the evidence it did not appear that the father had in fact been damaged. The case was afterwards before Mr. Justice Story on appeal, and is reported in 4 Mason, 380, but the question now involved was not considered, as the court found that the cause of action set forth in the libel and proved was not maritime in its nature.

We find no other reported case in which this subject was at all discussed until *Cutting* v. *Seabury*, 1 Sprague, 522, decided by Judge Sprague in the Massachusetts district in 1860. In that case, which was *in personam*, the judge said that "the weight of authority in the common law courts seems to be against the action, but natural equity and the general principles of law are in favor of it," and that he could not consider it "as settled that no action can be maintained for the death of a human being." The libel was dismissed, however, because on the facts it appeared that no cause of action existed even if in a proper case a recovery could be had. The same eminent judge had, however, held as early as 1849, in *Crapo* v. *Allen*, 1, Sprague, 185, that rights of action in admiralty for mere personal torts did not survive the death of the person injured.

Next followed the case of *The Sea Gull*, Chase's Dec. 145, decided by Chief Justice Chase in the Maryland district in 1867. That was a suit *in rem* by a husband to recover damages for the death of his wife caused by the negligence of the steamer in a collision in the Chesapeake Bay, and a recovery was had, the Chief Justice remarking that "there are cases, indeed, in which it has been held that in a suit at law no redress can be had by the surviving representative for injuries occasioned by the death of one through the wrong of another; but these are all common law cases, and the common law has its peculiar rules in relation to this subject, traceable to the feudal system and its forfeitures," and "it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by es-

tablished and inflexible rules." In his opinion he refers to the leading English case of *Baker* v. *Bolton*, 1 Camp. 493, where the common law rule was recognized and followed by Lord Ellenborough in 1808, and to *Carey* v. *Berkshire Railroad*, 1 Cush. 475; *S. C.* 48 Am. Dec. 616, to the same effect, decided by the Supreme Court of Massachusetts in 1848, and then says that "in other States the English precedent has not been followed." For this he cites as authority *Ford.* v. *Munroe*, *supra*, decided in 1838, but which, as we have seen, had been overruled by *Green* v. *Hudson River Railroad* in 1866, only a short time before the opinion of the Chief Justice was delivered, and *James* v. *Christy*, 18 Missouri, 162, decided by the Supreme Court of Missouri in 1853. The case of *The Highland Light*, Chase's Dec. 150, was before Chief Justice Chase in Maryland about the same time with *The Sea Gull*, and while adhering to his ruling in that case, and remarking that "the admiralty may be styled, not improperly, the human providence which watches over the rights and interests of those 'who go down to the sea in ships and do their business on the great waters,'" he referred to a Maryland statute giving a right of action in such cases, and then dismissed the libel because on the facts no liability was established against the vessel as an offending thing.

Afterwards, in 1873, Mr. Justice Blatchford, then the judge of the District Court for the Southern District of New York, sustained a libel by an administrator of an infant child who took passage on the steamer City of Brussels with his mother at Liverpool, to be carried to New York, and while on the voyage was poisoned by the carelessness of the officers of the vessel and died on board. *The City of Brussels*, 6 Ben. 370. The decision was placed on the ground of a breach of the contract of carriage.

The next case in which this jurisdiction was considered is that of *The Towanda*, 34 Leg. Int. (Philadelphia) 394; *S. C.* under the name of *Coggins* v. *Helmsley*, 5 Cent. Law Jour. 418, decided by Judge McKennan in the Circuit Court for the Eastern District of Pennsylvania in 1877, and before the judgment of this court in *Insurance Co.* v. *Brame*, *supra*. In that case

the ruling of Chief Justice Chase in *The Sea Gull* was approved, and the same authorities were cited, with the addition of *Sullivan* v. *Union Pacific Railroad, supra.*

In *The Charles Morgan*, 2 Flip. 274, before Judge Swing, in the Southern District of Ohio, on the 24th of October, 1878, the subject was again considered. That was a suit *in rem*, by the wife of a passenger on a vessel, to recover damages for the death of her husband; and in deciding upon the sufficiency of a plea to the jurisdiction, the judge, after quoting a remark of Mr. Justice Clifford in *The Steamboat Co.* v. *Chase*, 16 Wall. 532, that "difficulties, it must be conceded, will attend the solution of this question, but it is not necessary to decide it in this case," retained the libel because, "as the case at bar will probably go the Supreme Court of the United States, it will be better for all parties that the appeal should be taken after a trial upon its merits." Our decision in *Insurance Co.* v. *Brame* was announced on the 21st of January, 1878, but was evidently not brought to the attention of the judge, because, while citing quite a number of cases to show that the weight of authority was in favor of the English rule, he makes no reference to it. Indeed, it is probable that the volume of the reports in which it appears had not been generally distributed when his opinion was filed.

It thus appears that prior to the decision in *Insurance Co.* v. *Brame* the admiralty judges in the United States did not rely for their jurisdiction on any rule of the maritime law different from that of the common-law, but on their opinion that the rule of the English common law was not founded in reason, and had not become firmly established in the jurisprudence of this country. Since that decision the question has been several times before the Circuit and District Courts for consideration. In *The David Reeves*, 5 Hughes, 89, Judge Morris, of the Maryland district, considering himself bound by the authority of *The Sea Gull*, which arose in his district, and had been decided by the Chief Justice in the Circuit Court, maintained jurisdiction of a suit *in rem* by a mother for the death of her son in a collision that occurred in the Chesapeake Bay. He conceded, however, that this was contrary to the

common law and to the admiralty decisions in England, but, as the question had never been passed on in this court, he yielded to the authority of the Circuit Court decision in his own district.

The case of *Holmes* v. *Oregon and California Railway*, 6 Sawyer, 262; *S. C.* 5 Fed. Rep. 75, was decided by Judge Deady, in the Oregon district, on the 28th of February, 1880, and he held that a suit *in personam* could be prosecuted in admiralty against the owner of a ferry-boat engaged in carrying passengers across the Wallamet River, between East Portland and Portland, for the death of a passenger caused by the negligence of the owner. He conceded that no such action would lie at common law, but, as in his opinion the civil law was different, he would not admit that in admiralty, " which is not governed by the rules of the common law," the suit could not be maintained. His decision was, however, actually put on the Oregon statute, which gave an action at law for damages in such a case, and the death occurred within the jurisdiction of the State. Judge Sawyer had previously decided, in *Armstrong* v. *Beadle*, 5 Sawyer, 484, in the Circuit Court for the District of California, that an action at law under a similar statute of California would not lie for a death which occurred on the high seas and outside of the territorial limits of the State. In *The Clatsop Chief*, 7 Sawyer, 274; *S. C.* 8 Fed. Rep. 163, Judge Deady sustained an action *in rem* against an offending vessel for a death caused by negligence in the Columbia River and within the State of Oregon.

In *The Long Island North Shore Passenger and Freight Trans. Co.*, 5 Fed. Rep. 599, which was a suit for the benefit of the act of Congress limiting the liability of the owners of vessels, Judge Choate, of the Southern District of New York, decided that in New York, where there is a statute giving a right of action in cases of death caused by negligence, claims for damages of that character might be included among the liabilities of the owner of the offending vessel. In that case the injury which caused the death occurred within the limits of the State. In the opinion it is said (p. 608) : " It has been seriously doubted whether the rule of the common law, that a

cause of action for an injury to the person dies with the person, is also the rule of the maritime law. There is some authority for the proposition that it is not, and that in admiralty a suit for damage in such a case survives. *The Sea Gull,* 2 L. T. R. 15; *S. C.* Chase's Dec. 145; *Cutting* v. *Seabury,* 1 Sprague, 522; *The Guldfaxe,* 19 L. T. R. 748; *S. C.* L. R. 2 Ad. & Ecc. 325; *The Epsilon,* 6 Ben. 379, 381. But, however it may be in respect to the original jurisdiction of admiralty courts, I see no valid reason why the right of a person to whom, under the municipal law governing the place of the transaction and the parties to it, the title to the chose in action survives, or a new right to sue is given for damages resulting from a tort, the admiralty courts, in the exercise of their jurisdiction *in personam* over marine torts, should not recognize and enforce the right so given." This case was decided on the 12th of February, 1881, and on the 21st of the same month Judge Brown, of the Eastern District of Michigan, in *The Garland,* 5 Fed. Rep. 924, held that a suit *in rem* could be maintained by a father for the loss of the services of his two sons, killed in a collision in the Detroit River. In his opinion he said: "Were this an original question, . . . I should feel compelled to hold that this libel could not be maintained. But other courts of admiralty in this country have furnished so many precedents for a contrary ruling, I do not feel at liberty to disregard them, although I am at loss to understand why a rule of liability differing from that of the common law should obtain in these courts." His decision was, however, finally put on a statute of Michigan which gave an action at law for such damages.

In *The Sylvan Glen,* 9 Fed. Rep. 335, Judge Benedict, of the Eastern District of New York, dismissed a suit *in rem* on the ground that the statute of New York giving an action for damages in such cases created no maritime lien. This case was decided on the 4th of October, 1881. At November term, 1882, of the Circuit Court for the Eastern District of Louisiana, Judge Billings decided, in *The E. B. Ward, Jr.,* 4 Woods, 145; *S. C.* 16 Fed. Rep. 255, that a suit *in rem* could not be maintained for damages for the death of a person in a

collision on the high seas through the fault of a vessel having its home port in New Orleans, as the statute of Louisiana did not apply to cases where the wrongful act which caused the death occurred outside of the State. Afterwards, in June, 1883, Judge Pardee, of the Circuit Court for the same district, decided otherwise. *The E. B. Ward, Jr.*, 17 Fed. Rep. 456. In his opinion he said, p. 459: "Upon the whole case, considering the natural equity and reason of the matter, and the weight of authority as determined by the late adjudicated cases in the admiralty courts of the United States, I am inclined to hold that the ancient common law rule, ' *actio personalis moritur cum persona*,' if it ever prevailed in the admiralty law of this country, has been so modified by the statutory enactments of the various States and the progress of the age, that now the admiralty courts ' are permitted to estimate the damages which a particular person has sustained by the wrongful killing of another,' and enforce an adequate remedy. At all events, as the question is an open one, it is best to resolve the doubts in favor of what all the judges consider to be ' natural equity and justice.' " He also was of opinion that, as the offending vessel was wholly owned by citizens of Louisiana, and the port of New Orleans was her home port, the Louisiana statute applied to her, and that the court of admiralty could enforce such a right of action in a proceeding *in rem*. See also *The E. B. Ward, Jr.*, 23 Fed. Rep. 900.

The case of *The Manhasset*, 18 Fed. Rep. 918, was decided by Judge Hughes, of the Eastern Virginia District, in January, 1884, and in that it was held that a suit *in rem* could not be maintained by the administratrix against a vessel, under the statute of Virginia which gave an action for damages caused by the death of a person, even though the tortious act was committed within the territorial limits of the State, but that the widow and child of the deceased man had a right of action, by a libel *in rem*, under the general maritime law, which they could maintain in their own names and for their own benefit. In so deciding the judge said: "The decision of Chief Justice Chase in the case of *The Sea Gull, supra*, establishes the validity of such a libel in this circuit. I would main-

tain its validity independently of that precedent. Such a right of action is a maritime right, conferred by the general law maritime; (Domat, Civil Law, pt. 1, bk. 2, tit. 8, § 1, art. 4; Grotius, lib. 2, c. 17, § 13; Ruth. Inst. 206; Bell, Prin. Sc. Laws, p. 748, § 2029; Ersk. Inst., bk. 4, tit. 4, § 105;) and is not limited as to time by the twelve months' limitation of the State statute."

The last American case to which our attention has been called is that of *The Columbia*, 27 Fed. Rep. 900, decided by Judge Brown, of the Southern District of New York, during the present year. In giving his opinion, after referring to the fact that, as he understood, the question was then pending in this court, the judge said: "Awaiting the result of the determination of that court, and without referring to the common law authorities, I shall hold in this case, as seems to me most consonant with equity and justice, that the pecuniary loss sustained by persons who have a legal right to support from the deceased, furnishes a ground of reclamation against the wrong-doer which should be recognized and compensated in admiralty."

In *Monaghan* v. *Horn, in re The Garland*, 7 Canada Sup. Ct. 409, the Supreme Court of Canada held that a mother could not sue in her own name in admiralty for the loss of the life of her son, on the ground that no such action would lie without the aid of a statute, and the statute of the Province of Ontario, where the wrong was done, and which was substantially the same as Lord Campbell's act, provided that the action should be brought in the name of the administrator of the deceased person. No authoritative judgment was given as to the right of an administrator to sue in admiralty under that act. This was in 1882, before *The Vera Cruz, supra*, in the House of Lords.

Such being the state of judicial decisions, we come now to consider the question on principle. It is no doubt true that the Scotch law " takes cognizance of the loss and suffering of the family of a person killed," and gives a right of action therefor under some circumstances. Bell's Prin. Laws of Scot., 7th ed. p. 934, § 2029; *Cadell* v. *Black*, 5 Paton, 567; *Weems* v. *Mathieson*, 4 Macqueen, 215. Such also is the law of France.

28 Merlin, Répertoire, 442, *verbo* Réparation Civile, § iv; *Rolland* v. *Gosse*, 19 Sirey (Cour de Cassation), 269. It is said also that such was the civil law, but this is denied by the Supreme Court of Louisiana in *Hubgh* v. *The New Orleans & Carollton Railroad*, 6 La. Ann. 495; *S. C.* 54 Am. Dec. 565, where Chief Justice Eustis considers the subject in an elaborate opinion after full argument. A reargument of the same question was allowed in *Hermann* v. *New Orleans & Carollton Railroad*, 11 La. Ann. 5, and the same conclusion reached after another full argument. See also Grueber's Lex Aquilia, 17. But however this may be, we know of no country that has adopted a different rule on this subject for the sea from that which it maintains on the land, and the maritime law, as accepted and received by maritime nations generally, leaves the matter untouched. It is not mentioned in the laws of Oleron, of Wisbuy, or of the Hanse Towns, 1 Pet. Adm. Dec. Appx.; nor in the Marine Ordinance of Louis XIV., 2 Pet. Adm. Dec. Appx.; and the understanding of the leading text writers in this country has been that no such action will lie in the absence of a statute, giving a remedy at law for the wrong. Benedict Adm., 2d ed., § 309; 2 Parsons' Ship. & Adm. 350; Henry, Adm. Jur. 74. The argument everywhere in support of such suits in admiralty has been, not that the maritime law, as actually administered in common law countries, is different from the common law in this particular, but that the common law is not founded on good reason, and is contrary to " natural equity and the general principles of law." Since, however, it is now established that in the courts of the United States no action at law can be maintained for such a wrong in the absence of a statute giving the right, and it has not been shown that the maritime law, as accepted and received by maritime nations generally, has established a different rule for the government of the courts of admiralty from those which govern courts of law in matters of this kind, we are forced to the conclusion that no such action will lie in the courts of the United States under the general maritime law. The rights of persons in this particular under the maritime law of this country are not different from those under the

common law, and as it is the duty of courts to declare the law, not to make it, we cannot change this rule.

This brings us to the second branch of the question, which is, whether, with the statutes of Massachusetts and Pennsylvania above referred to in force at the time of the collision, a suit *in rem* could be maintained against the offending vessel if brought in time. About this we express no opinion, as we are entirely satisfied that this suit was begun too late. The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all. No one will pretend that the suit in Pennsylvania, or the indictment in Massachusetts, could be maintained if brought or found after the expiration of the year, and it would seem to be clear that, if the admiralty adopts the statute as a rule of right to be administered within its own jurisdiction, it must take the right subject to the limitations which have been made a part of its existence. It matters not that no rights of innocent parties have attached during the delay. Time has been made of the essence of the right, and the right is lost if the time is disregarded. The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right. No question arises in this case as to the power of a court of admiralty to allow an equitable excuse for delay in suing, because no excuse of any kind has been shown. As to this, it only appears that the wrong was done in May, 1877, and that the suit was not brought until February, 1882, while the law required it to be brought within a year.

*The decree of the Circuit Court is reversed, and the cause remanded, with instructions to dismiss the libel.*