## WELSH v. THE NORTH CAMBRIA.

*(District Court, E. D. Pennsylvania. June 25, 1889.)*

1. ADMIRALTY—JURISDICTION—STATE LAWS.
     The admiralty system of laws is within the exclusive control of congress and the states have no power to legislate in regard to it.
2. SAME.
     In some few instances the states may exercise powers vested in the federal government, but this doctrine is not to be extended beyond the subjects to which it has been applied.
3. MARITIME LIENS—DEATH BY WRONGFUL ACT.
     The acts of assembly of Pennsylvania approved April 15, 1851, (P. L. 674,) and April 26, 1855, (P. L. 309,) do not by their terms create a lien for death by negligence upon the high seas, and as there is no jurisdiction outside of statutory provision none can be sustained.

*(Syllabus by the Court.)*

In Admiralty. Hearing on libel and answer.

Libel by Bridget Welsh, in her own behalf and that of her minor children, against the steam-ship North Cambria, under Acts Pa. April 15, 1851, and April 26, 1855, to recover for the death of her husband, Peter Welsh, who was killed on May 25, 1889, while employed as a laborer on said steam-ship, by the falling upon him of a tub of iron, through the negligence of employes not fellow-servants of deceased.

*McKinley, Driver & Coulston,* for libelant.

*H. G. Ward* and *E. B. Convers,* for respondents.

BUTLER, J.   The question of jurisdiction is raised on this motion by consent.   That the libel cannot be sustained independently of statutory provision, is settled by *The Harrisburg,* 119 U. S. 199, 7 Sup. Ct. Rep. 140.   That the Pennsylvania statute, on which the case is put, does not create an admiralty lien, and thus authorize the seizure, seems entirely clear.   There is nothing whatever in the statute indicative of a purpose to create such a lien; and if there was I would hold the statute to be inoperative in this respect.   The states have no power to interfere with the admiralty system of laws; they can add nothing to it, nor take anything from it.   The subject lies within the exclusive domain of congress.   It is true that the supreme court has held that as respects pilotage and a few other subjects the states may exercise powers vested in the federal government until the latter assumes the assertion of its authority.   The disfavor, however, with which this (apparently illogical) doctrine (born, doubtless, of the excessive tenderness which formerly existed respecting "state rights") is regarded to-day justifies a very confident belief that it will not be extended beyond the subjects to which it has been applied.   To this doctrine must be ascribed the decision in *The Lottawanna,* 21 Wall. 580, that liens created by state statute for the repair of vessels, etc., in home ports within the state, may be enforced by admiralty.   As this court held however in *The E. A. Barnard,* 2 Fed. Rep. 712, such statutes do not create an admiralty lien or ingraft any new provision upon the admiralty laws.   The court in such case has jurisdiction, as the debt arises from an admiralty contract; and *The Lottawanna* decides no more than that the state may make this debt a lien for the purpose of securing, and regulating distribution between its own citizens in the absence of provision respecting it by congress.   Even this is acknowledged to be anomalous and is put upon "long usage" rather than any well-defined principle.   The views of this court on the subject generally, are stated in *The Barnard,* above cited.   I will not repeat them. They are as applicable here as they were there.   The decisions of the district courts respecting the subject are not harmonious.   In *The Sylvan Glen,* 9 Fed. Rep. 335, and *The Manhasset,* 18 Fed. Rep. 918, the state statutes were denied effect in the admiralty.   This view is also supported by the judgment in *The Vera Cruz,* L. R. 10 App. Cas. 59.   In other instances the question has been decided differently.   It has been so fully discussed in the cases cited that I will not enlarge upon it.