## COURT OF COMMON PLEAS OF BALTIMORE CITY

Filed May 18, 1894.

NATHAN TOOMER

VS.

PULLMAN'S PALACE CAR CO.

*Marcellus P. Foster, Esq.*, of Georgia, and *William Colton, Esq.*, for the plaintiff.

*William S. Bryan, Esq.*, and *Edward N. Rich, Esq.*, for defendant.

PHELPS, J.—

By the Court: Gentlemen, before proceeding to announce the result the Court has reached after considering the very able and exhaustive arguments with which it has been favored by both sides, and for which it now expresses its acknowledgment to counsel, there is a preliminary point I should like to have cleared up, and that is with respect to the status of the parties here. There is nothing on the face of the pleadings that shows the non-residence of the plaintiff. I understand, however, from the arguments, and from the fact that we have distinguished counsel from another State here, who states he is the special counsel of the plaintiff, that the plaintiff is a non-resident. Am I right in that assumption?

Mr. Bryan: Yes, sir.

The Court: That being the case, have you considered the effect, the defendant being a foreign corporation, of Section 297 of the Corporation Article, which I will hand down for counsel to read, upon this case?

Mr. Bryan (after inspection of same): I suppose, sir, if we had chosen, we could have upset the case on that ground, but, as it was more convenient for all parties to try it here than to go down in Georgia, we concluded to try it here. There is a case in the Court of Appeals, which says, if the defendant answers, then it waives that question. We have waived that by answering.

The Court. You have distinctly, then, waived the point?

Mr. Bryan: We have waived that point in this case. I can show your Honor the decision.

The Court: Well, that is a definite waiver of the point; and, of course, it will not be raised at any subsequent stage of the case?

Mr. Bryan: It will not be raised at any subsequent stage of this case.

The Court: Gentlemen, the argument has taken a very wide range, but not more so than the point involved in the case necessarily required, and has embraced quite a variety of interesting and novel questions, novel to this Court, and novel in this State; and a great deal of light has been thrown upon them by counsel by the numerous authorities cited, which disclose a perplexing conflict outside of this

State—there being no adjudications herein.

I deem it proper to decide only so much of the matter involved in this controversy as is necessary for the disposition of this particular demurrer. And I will, therefore, commence with what may be called the "business end" of the case.

We have in this State the common law pleading, somewhat modified, but not radically as yet. We have not such a Code of Procedure as exists in many of the other States, and which exists, I believe, in the State from which our brother comes—Georgia. We still have the common law rule, in all its pristine vigor, that when pleas are put in, and a demurrer is interposed to those pleas, the demurrer, to use a technical expression, "mounts up," and devolves upon the Court the necessity of considering where the first error in the pleading occurred, provided it be an error in substance, because any error in form, which would have been the occasion for a special demurrer at common law would be considered as waived by pleading over. Any radical defect in the declaration, not a defect in form, but a defect in substance, is a defect that is reached by a demurrer to the pleas. And however defective a plea may be, considered as a plea, and however insufficient it may be in point of substance, it is the duty of the Court, notwithstanding the imperfection in the plea, if it finds a prior defect, substantial in its nature, in the declaration itself, applying to old practice, to give judgment upon demurrer for the defendant; but according to the modified practice, we having legislation which gives to either side the opportunity to amend, there would not be a judgment entered upon the demurrer at once, but the demurrer would be entered, overruled, and an opportunity given to the plaintiff to amend his declaration, and if that opportunity was not availed of within a reasonable time then the judgment would be entered finally upon the demurrer. In this case there is a general issue plea, which is not demurred to, and which, of course, will not be affected by the ruling.

The defect referred to has been so thoroughly treated by counsel that I need not take up time in considering it, there being other matters pressing, and other counsel in attendance waiting for their cases to come up; nor could I, if I felt disposed, improve upon the argument which has been submitted that an action at common law cannot be sustained for an injury that results in death. That I accept as the law governing this case.

There is conflict of authority, as to whether damages for intervening injuries incidentally resulting from a fatal accident, anterior to death, can be recovered by a surviving husband, or parent of a minor child, or by a personal representative. The conflict is quite perplexing, and I have not had time to personally investigate all the cases cited, and must rely very much upon the impression made by them during argument. The weight of authority seems to incline in favor of the proposition that there can be no recovery either for damages resulting from the death itself—for all that class of damages covered by Lord Campbell's act—or for intermediate and incidental damages, provided those damages that so result are the necessary consequence of the injury that caused the death.

I followed, with intense pleasure, the very eloquent and entertaining argument of our friend from Georgia, who expended a great deal of ingenuity, and delighted us all by its display, in an attempt to get away from the decision of the United States Supreme Court in the case of In re Harrisburg, 119 U. S. 199, in which he attempted to maintain the proposition that a claim for damages in consequence of death was simply not a maritime claim, and could not be recovered in admiralty, and that the Court really had no business to decide anything more. But before the Court got to that point, they had to consider the state of the common law. They begin by saying there was no maritime law upon that subject different from the common law. Neither in any of the earlier classics of maritime law, the laws of Oleron, and Wisbuy, etc., nor in later adjudications was there to be found a maritime law of death claims different from the common law. Hence, the effort of the Court was to ascertain the condition of the common law with respect to such claims. They reviewed a number of cases cited here, and relied upon in argument, and especially a case that

made a very decided impression on my mind when quoted, the decision of Judge Dillon, in Sullivan vs. Union Pacific R. R., 3 Dillon 334. I should not have declined to follow, amidst the bewildering conflict of authority, such a towering name as that, provided I had not found him to be expressly overruled by higher authority. The Supreme Court distinctly says the opinion of Judge Dillon, on the Circuit, was directly in conflict with the previous decision of that Court in 95 U. S., in the case of Life Insurance Company vs Brame, page 754. That was a case in which a life insurance company sued the man who had killed the assured, to whose beneficiary they had been obliged to pay the avails of the policy, thus endeavoring to compensate or recoup themselves, by an effort to hold responsible the person who had assassinated the assured, in damages for the amount they had to pay the beneficiary. A stronger case, and one more nearly approaching what would be supposed to be natural justice and equity, could not well be conceived of, or a case where a Court could have better strained a principle. The Supreme Court, in that case, unanimously decided no action could be sustained for an injury that resulted in death, and that case, in 95 U. S., has been reaffirmed in 119 U. S. There has been no decision of our own Court of Appeals that has reviewed these cases. That being the case I feel it to be my duty to follow that line of cases, and base my decision upon the authority of the Supreme Court.

That eliminates from this declaration, everything but one element, and that is, whatever personal damages the plaintiff himself may have suffered by reason of the detention, or discontinuance of the uninterrupted trip referred to in the declaration. I have looked the declaration over very carefully, and very closely, because a great deal depends upon the exact words used, and while there may be room for some difference of opinion as to what construction should be put upon the language of the two counts in the declaration, the language in this connection being identical in both, I think, on the whole, nothing is therein set out that the Court can recognize as a claim for damages that can be sustained. And here, again, we strike another conflict

of authority, as to whether there can be a recovery for mental pain, not connected with or incidental to physical suffering. Very respectable authorities have held mental anguish, alone, a ground of action; and very respectable authorities upon the other side, have repudiated that idea. There, again, in the absence of any adjudication in our own State, or any decision that we can find, which, by analogy, seems to hold out a light, I must be governed by what I conceive to be the prevailing weight of authority on that subject elsewhere; and, I think, the prevailing weight of authority on that subject is that, for mental pain alone, unaccompanied by physical injury, pecuniary loss, or anything else that is tangible, there can be no recovery. Now, when I look at the declaration in that light, I can see nothing in it that offers to go further than a claim for damages for discomfort, annoyance, and anxiety arising from the delay. The word discomfort is vague. Discomfort may be either of body or mind. Taken in connection with its associated words, annoyance and anxiety, both of which are states of mind, its application is necessarily limited to a mental condition.

There is, it is true, a word used lower down that refers to the body, but it is so inseparably connected with the sickness and death of the wife, it must go under the same category. Nothing is substantially claimed in this declaration apart from the death claim, and the mental worry, anxiety and annoyance, and for them I don't think a recovery can be had.

Now, assuming the pleas are all bad, and assuming the law is with the plaintiff upon his contention that the contract was a contract within the power of the corporation to make, in other words, not a contract *ultra vires*. Yet, upon the principles I started out in announcing, it follows, for the reasons stated, relating to the substantial, practical, business aspect of this case, the damage part of it, that the demurrer must be overruled to those pleas. The general issue plea still stands, and you may take such action upon that as you think proper. The docket entry will be, "Demurrer overruled."

Mr. Colton (after consultation): We will submit to a non pros, Your Honor.

*—Judgment of non pros upon call.*