**John FUTCH, Individually and as Personal Representative of Cecil Futch**

v.

**MIDLAND ENTERPRISES, INC., et al.**

**Civ. A. No. 71–4.**

United States District Court,
M. D. Louisiana.

June 22, 1972.

James A. George, Wendell G. Lindsay, George, Lindsay & Seago, Ltd., Baton Rouge, La., for plaintiff.

George B. Matthews, Donald R. Abunza, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., for defendants.

E. GORDON WEST, District Judge:

On January 9, 1969, the M/V THERESA F, a 145 foot vessel owned by the defendant, Midland Enterprises, Inc., and under bareboat charter at the time to the defendant, Red Circle Transport Company, capsized while towing the barge FREEPORT I. The FREEPORT was owned by the defendant, Ohio River Company. Cecil Futch, plaintiff's son, who was a member of the crew of the THERESA F, was drowned when the vessel capsized. Plaintiff, John Futch, claiming in his original complaint to be the personal representative of his deceased son, brings this suit under the Jones Act, 46 U.S.C.A. § 688, the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq., and under the General Maritime Law of the United States. The defendants have answered alleging that (1) plaintiff is not the personal representative of the deceased Cecil Futch; (2) the deceased, Cecil Futch, left a surviving widow, Mrs. Ann Futch, who is the duly qualified personal representative of the deceased, and (3) the said Mrs. Ann Futch, as the duly qualified personal representative of the deceased, was paid the sum of $75,000 by the defendants, for which she gave her receipt and release, which, by its terms, does release, remise, and forever discharge the defendants,

"* * * of and from any and all liability or claims for damages, whether now known or hereafter discovered, arising either directly or indirectly out of the death of Cecil M. Futch as

aforesaid including, without limitation, claims for pain and suffering, funeral expenses, under the Jones Act, 46 U.S.C. § 688, the Death on the High Seas Act, 46 U.S.C. § 761, the General Maritime Law or under any State or Federal Statute or otherwise, it being the intent of the undersigned to completely release and discharge any and all claims which she in her aforesaid capacities may have for damages or otherwise as a result of the matters aforesaid."

The defendants contend that since Mrs. Ann Futch is the duly qualified personal representative of the deceased, the plaintiff, John Futch, has no standing to bring this suit, and that therefore defendants are entitled to a summary judgment dismissing this suit. Plaintiff answers this contention by conceding that he is not the duly qualified personal representative of the deceased, and that therefore he is barred from bringing this suit under the Jones Act or the Death on the High Seas Act, but he asserts that in light of the decision of the United States Supreme Court in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), he has a right of action for wrongful death under general maritime law entirely different in nature and apart from that asserted by the decedent's widow in her capacity of personal representative of the deceased. Therefore, the question before the Court on defendants' motion for summary judgment is whether or not, under the cause of action for wrongful death under maritime law recognized by Moragne, someone other than the personal representative of the deceased may bring an action.

■ While there are many unanswered questions as to the exact nature of the so-called Moragne-type general maritime cause of action, if indeed any such "new" right of action was in fact created, the Court here is only concerned with the question of whether or not this particular plaintiff has standing to bring this particular suit. We conclude that he does not.

Other than establishing some guidelines, the only definitive holdings in Moragne were that The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886) was overruled and that "An action does lie under general maritime law for death caused by violation of maritime duties." 90 S.Ct. at 1792. In response to the argument that overruling The Harrisburg would require the manufacturing of much law by lower courts to fill the void left by the absence of The Harrisburg, the Court said:

"We believe these fears are exaggerated, because our decision does not require the fashioning of a whole new body of federal law, but merely removes a bar to access to the existing general maritime law." 90 S.Ct. at 1790.

Later, in the same decision, the Court said:

" * * * the difficulties should be slight in applying accepted maritime law to actions for wrongful death." 90 S.Ct. at 1791.

When the Court, in Moragne, addressed itself to the question of who could be the beneficiaries in a so-called Moragne wrongful death action, it merely established some guidelines without expressly answering the question. The Court suggested that it might be proper to look at what Congress has done in connection with wrongful death actions under the Death on the High Seas Act, the Jones Act, and the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 909, in order to determine who should be beneficiaries in case of wrongful death under the general maritime law. While the Supreme Court in Moragne did not attempt to answer this question, they did suggest that uniformity should be a consideration.

■ In the instant case we are not called upon to decide who the beneficiary should be. We must only decide whether or not this particular plaintiff

has standing to sue in this case. Plaintiff relies on two recent cases to further support his reliance on *Moragne,* but neither of these cases is dispositive of the present problem. Dennis v. Central Gulf Steamship Corp., 453 F.2d 137 (CA 5–1972), which allowed damages for a decedent's pain and suffering and for funeral expenses throws no light on our problem. In that case the Court said:

> "In limine we think it important to point out that [defendant] does not challenge the right of decedent's daughter * * * to bring this suit. The only issue raised is the proper measure of her damages." 453 F.2d at 139.

Thus it is apparent that the same question now before this Court was not at issue in *Dennis.* But what *is* important is the statement made by the Court in *Dennis* that:

> "Even if a situation exists where the applicable state law does not provide damages for decedent's pain and suffering for a wrongful death on the high seas, this disparity does not destroy the uniformity mandated in Moragne. The 'uniformity' that is fundamental in maritime law has to do with the bases of liability, not with differing elements of damages that may be recoverable in differing circumstances with differing classes of beneficiaries.
>
> "While 'there is now a cause of action for wrongful death in admiralty that is not dependent on adjacent state law', * * * federal courts may look to state law and adopt it as the general maritime law if it is not inimical to the maritime law. * * * Indeed, when questions concerning the measure of damages require resolution *Moragne* points to the Death on the High Seas Act and the numerous state wrongful death acts that have been implemented with success as a persuasive analogy for guidance." 453 F.2d at 140.

Thus, insofar as the basis of liability and the right to sue is concerned, uniformity is mandated by *Moragne.* This uniformity can only be attained if, as far as possible, uniform federal law is applied rather than the varying laws of the different states. Thus, we should look to existing federal law to ascertain, if possible, whether or not the plaintiff here, under the circumstances of this case, has standing to sue.

■ It is well established that under both the Death on the High Seas Act and the Jones Act, none but the personal representative of a decedent may bring suit. And under the Longshoremen's and Harbor Workers' Compensation Act, it is the "legal representative" of the decedent who must bring the suit. Clearly the plaintiff, who admittedly is neither the personal representative nor the legal representative of the decedent here, has no standing to sue under any of these three statutes. Consequently, when we look to other federal laws for guidance, and when we seek uniformity, we must conclude that in order for plaintiff to sue for Moragne-type damages, he must be a personal representative of the decedent.

■ The only other area which should be mentioned is that involving a death claim under the Louisiana Wrongful Death Statutes, Louisiana Civil Code Article 2315. While under that statute one is not required to be the personal representative of the deceased, nevertheless he must be one of the beneficiaries specifically designated therein. By the terms of Article 2315, a surviving parent may sue only if the decedent left no surviving spouse or child. Thus, since decedent here did, in fact, leave a surviving spouse, plaintiff has no standing to sue under Article 2315.

Thus, to permit the plaintiff to maintain this suit, under the circumstances of this case, would be to ignore rather than to look to federal laws pertaining to wrongful death actions in direct contravention to the admonitions of the Supreme Court in *Moragne.*

The defendants in this case had the right to deal with the authorized person-

al representative of the deceased and they had the right to affect a settlement with such representative of all claims growing out of this accident. This is the inevitable conclusion we must come to if we look to existing federal law for guidance in determining who may bring a suit under general maritime law for wrongful death. Mrs. Ann Futch, widow of the deceased, was the unchallenged personal representative of the deceased. Plaintiff, therefore, has no standing to sue these defendants. Defendants' motion for summary judgment should be granted and this suit should be dismissed, and judgment will be entered accordingly.