HUGHES AIRCRAFT COMPANY, Plaintiff,

v.

NATIONAL SEMICONDUCTOR CORPORATION, Defendant.

Civ. No. 93–20569 SW.

United States District Court, N.D. California.

March 24, 1994.

Philip C. Swain, Kirkland & Ellis, Los Angeles, CA, William A. Streff, Jr., Kirkland & Ellis, Chicago, IL, Jay I. Alexander, Kirklan & Ellis, Washington, DC, for plaintiff.

William J. Goines, Thomas P. Murphy, Berliner, Cohen, San Jose, CA, Timothy N. Trop, Arnold, White & Durkee, Houston, TX, Irving S. Rappaport, Menlo· Park, CA, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; ORDERING SUPPLEMENTAL BRIEFING; SETTING HEARING DATE

SPENCER WILLIAMS, District Judge.

## BACKGROUND

This action involves three patents relating to certain technology used in the semiconductor industry: (1) No. 3,472,712, entitled "Field–Effect Device with Insulated Gate," originally issued on October 14, 1969; (2) No. 3,507,709, entitled "Method of Irradiating Dielectric–Coated Semiconductor Bodies with Low Energy Electrons," originally issued on April 21, 1970; and (3) No. 3,615,934, entitled "Insulated Gate Field Effect Device Having Source and Drain Regions Formed in Part by Ion Implantation and Method of Making Same," originally issued on October 26, 1971. These patents are collectively referred to as "the Bower patents."

At some point prior to 1980, these patents were allegedly transferred to Plaintiff Hughes Aircraft Company (hereafter "Hughes"). Starting in 1980 Hughes began contacting companies which it believed were infringing its patents. Defendant National Semiconductor Corporation (hereafter "NSC") was one of the companies Hughes contacted. In 1988 Hughes entered into a tolling agreement with NSC which provided in pertinent part:

The statutory period of recovery under 35 U.S.C. § 286 [1] is hereby tolled as of September 1, 1988 with respect to [the patents] such that in any subsequent lawsuit by HUGHES AIRCRAFT COMPANY against NATIONAL SEMICONDUCTOR CORPORATION alleging infringement of [the patents], NATIONAL SEMICONDUCTOR CORPORATION shall not assert 35 U.S.C. § 286 as a defense for any infringement of said patents occurring subsequent to September 1, 1982.

On May 29, 1992, NSC and Hughes executed a tolling agreement extension, which provided in pertinent part that

HUGHES and NATIONAL desire to promptly enter into and pursue negotiations toward settlement of HUGHES' claim against NATIONAL for infringement of the patents without the need for HUGHES to file an infringement lawsuit against NATIONAL and for NATIONAL to defend such suit[.]

* * *

WHEREAS [in the 1988 tolling agreement], NATIONAL agreed [that it] would not assert 35 U.S.C. 286 as a defense to damages for any infringement of said patents occurring subsequent to September 1, 1982.... The tolling period under 35 U.S.C. 286 in the aforesaid Tolling Agreement between NATIONAL and HUGHES is hereby extended until December 1, 1992 with respect to damages under 35 U.S.C. 286 such that the tolled period runs from September 1, 1982 to December 1, 1986.

On December 2, 1992, Hughes filed the above-captioned patent infringement suit against NSC in the Northern District of Illinois. It was transferred to the Northern District of California on March 4, 1993, pursuant to 28 U.S.C. § 1404(a).

On December 28, 1993, NSC filed a Motion to Dismiss Hughes' claim for infringement of the '712 patent pursuant to Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction). NSC's theory is that (1) the six-year statute of limitations governing Hughes' claim for damages, 35 U.S.C. § 286, is not a statute of limitations in the usual sense, but rather a limitation on a federally created right; (2) as such, it defines the federal courts' jurisdiction under the Patent Act and cannot be altered or extended by tolling agreements; and, therefore, (3) this Court lacks subject

---

1. 35 U.S.C. § 286 provides in pertinent part: Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement.

matter jurisdiction over Hughes' claim for infringement of the '712 patent, since it expired more than six years before Hughes filed this action, and hence could not have been infringed during the jurisdictional period.[2] In the alternative, NSC seeks partial summary judgment regarding Hughes' claim for infringement of the '712 patent. On March 9, 1994, Hughes filed a Cross–Motion for Partial Summary Judgment on the issue of whether this Court has jurisdiction to hear its claims for infringement occurring before December 2, 1986 and after September 1, 1982, on the theory that the tolling agreements extended the applicable limitations period. The Court heard oral argument on March 23, 1994.

## DISCUSSION

### A. NSC's Motion to Dismiss

The central issue presented by NSC's Motion to Dismiss is whether 35 U.S.C. § 286 is a jurisdictional statute, which may not be extended by the parties through tolling agreements, or whether it is merely an ordinary statute of limitations, which may be tolled. The Supreme Court has stated that "[t]he basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable . . . after the prescribed time.'" *Burnett v. New York Central R. Co.*, 380 U.S. 424, 426, 85 S.Ct. 1050, 1053, 13 L.Ed.2d 941 (1965) (quoting *Midstate Horticultural Co. v. Pennsylvania R. Co.*, 320 U.S. 356, 360, 64 S.Ct. 128, 130, 88 L.Ed. 96 (1943)). In making this determination, the courts "must examine the purpose and policies underlying the limitation provision, the [a]ct itself, and the remedial scheme developed for the enforcement of the rights given by the [a]ct." *Burnett*, 380 U.S. at 427, 85 S.Ct. at 1054.

The original Patent Act was passed by the First Congress in 1790. 1 Stat. 109. To discover the basic purpose of this Act, one need look no further than the section of the Constitution which gave Congress the authority to enact it. Article I, Section 8, allows Congress to pass legislation "[t]o pro-mote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Regarding this, James Madison wrote that "[t]he utility of this power will scarcely be questioned. The copyright of authors has been solemnly adjudged in Great Britain to be a right of common law. The right to useful inventions seems with equal reason to belong to the inventors. The public good fully coincides in both cases with the claims of individuals." *The Federalist* No. 43. Based on these sources, the basic purpose of the Patent Act was twofold: (1) to protect the rights of inventors through a national system of laws; and (2) to serve the public generally by motivating individuals to pursue new ideas and new technologies. However, patent rights were not meant to last indefinitely, but were intended to end at some point after these two basic goals had been achieved.

The Patent Act did not contain any time limitation for private infringement suits until 1870, when Congress enacted a provision stating that "all actions shall be brought during the term for which the letters-patent shall be granted or extended, or within six years after the expiration thereof." Act of July 8, 1870, ch. 230, § 55, 16 Stat. 206. However, this provision was not carried forward into the Revised Statutes of 1874.

In 1895, the Supreme Court held that actions seeking damages for patent infringement were governed by state statutes of limitations governing tort suits. *Campbell v. City of Haverhill*, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895). In 1897, Congress enacted the predecessor of 35 U.S.C. § 286, which provided that "in any suit or action brought for the infringement of any patent there shall be no recovery of profits or damages for any infringement committed more than six years before the filing of the bill of complaint or the issuing of the writ in such suit or action." Act of March 3, 1897, ch. 391, § 6, 29 Stat. 694. The House Report regarding this Act states that

Section 6 provides a statute of limitation in patent cases. Under the decisions of the

---

2. Hughes admits that the '712 patent expired on October 14, 1986. Opp. at 19:20–21.

Supreme Court, the State statutes of limitation apply to actions for infringement of patents brought upon the law side of the court. It seems ... desirable that there should be a uniform statute of limitations.

H.R.Rep. No. 940, 54th Cong., 1st Sess. (1896). During the debates on the amendment, Representative Draper reiterated that

Section 6 provides a statute of limitation in patent causes. This is the only section upon which there was any difference of opinion in your committee. Some members of the committee thought that the statutes of limitation of the several states should control, whereas this bill proposes to make a universal statute of six years, covering the entire country.

29 Cong.Rec. 901 (January 18, 1897). In addition, Representative Mitchell stated that

The universal statute of limitation provided for by this bill will also meet ... with general approval by the courts, for it again simplifies the issues and gives six years— an abundant time to the industrious prosecutor of his rights—to push his claims, and prevents an inventor sleeping on his rights too long and allowing others to develop his invention, and when they have amassed profit by their industry, to compel them to pay triple damages after a long lapse of years. The statutes giving patent rights being national, the limitation of recovery should also be limited by national laws and be uniform throughout the country.

29 Cong.Rec. 902 (January 18, 1897).

Based on its legislative history, it appears that the primary purpose of the 1897 amendment was to neutralize the effect of the Supreme Court's decision in *Campbell* and to provide a uniform statute of limitations for patent infringement actions. Congress also intended to preclude infringement actions brought well after the acts of infringement had occurred by patent holders who had slept on their rights.

The first judicial effort to interpret the 1897 amendment occurred in *Peters v. Hanger*, 134 F. 586 (4th Cir.1904). In that case, the Fourth Circuit stated in dictum that "the amendment in question must be treated as a qualification or condition on the statutory

right of recovery [under the Patent Act], rather than as an ordinary statute of limitation. From this conclusion it follows that ... this restriction is not subject to the disabilities and excuses through which ordinary statutes of limitation may be avoided." *Peters*, 134 F. at 589. Although the Fourth Circuit did not explain its reasoning in detail, it is clear that it relied, at least in part, on the Supreme Court's reasoning in *The Harrisburg*, 119 U.S. 199, 214, 7 S.Ct. 140, 147, 30 L.Ed. 358 (1886), *overruled on other grounds by Moragne v. States Marine Lines*, 398 U.S. 375, 409, 90 S.Ct. 1772, 1792, 26 L.Ed.2d 339 (1970), in which the Court stated that when a time limitation is enacted as part of a statute creating a new civil right of recovery, it should be interpreted as a substantive limitation on the right created under the statute, not as a procedural limitation governing the time for seeking the remedy.

In *Pollen v. Ford Instrument Co.*, 108 F.2d 762 (2d Cir.1940), the Second Circuit embraced the *Peters* dictum and stated that

the rule that concealment postpones the running of limitations does not touch suits for patent infringement. The provision in the patent law that there shall be no recovery for infringements committed more than six years before suit is not a mere statute of limitation. It is a part of the statute which creates the liability and gives the right of action. It is a condition on the right, not on the remedy, and it is not subject to the disabilities or excuses by which ordinary statutes of limitation may be avoided by a plaintiff.... Where the time for commencing action is prescribed in the statute which creates the liability and gives the right of action, the time is not extended by reason of fraud or concealment which might work an extension of ordinary statutes of limitation.

*Pollen*, 108 F.2d at 763 (citations omitted).

The precedential value of *Peters* and *Pollen* is undermined inasmuch as they were based on the Supreme Court's reasoning in *The Harrisburg*. Since *Peters* and *Pollen* were decided, the Supreme Court has criticized the portion of *The Harrisburg* upon which they relied. In *Burnett v. New York Central R. Co.*, 380 U.S. 424, 427 n. 2, 85

S.Ct. 1050, 1054 n. 2, 13 L.Ed.2d 941 (1965), the Supreme Court stated:

> While the embodiment of a limitation provision in the statute creating the right which it modifies might conceivably indicate a legislative intent that the right and limitation be applied together when the right is sued upon in a foreign forum, the fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether the statute of limitations should be tolled. Thus th[is] ... distinction would seem to be of little help in deciding questions of extending the limitation period.

Although *Peters* and *Pollen* continue to have some historical value, their analysis of the six-year limitation should not be given excessive weight.

In 1952, Congress added the words "except as otherwise provided by law" to the beginning of the limitation provision. Act of 1952, ch. 29, § 286, 66 Stat. 813. The Federal Circuit addressed the meaning of this amendment in *A. Stucki Co. v. Buckeye Steel Castings Co.*, 963 F.2d 360 (Fed.Cir.1992). In this case, Stucki contended, without citing authority, that the 1952 amendment should "be broadly construed as encompassing a equity-based exception the application of the six-year limitation ... so as 'to uphold the rights of diligent patentees and prevent wrongdoers from escaping liability.'" *Stucki*, 963 F.2d at 362. The Federal Circuit found that there was no legislative history explaining the relevant portion of the 1952 amendment or any case law supporting Stucki's interpretation of it. *Stucki*, 963 F.2d at 363. It also noted that, although it seemed logical "that the introductory phrase ... may have been added in recognition of state laws which toll statutes of limitation in favor of plaintiffs laboring under disabilities such as incapacity or fraud[,] ... pre–1952 authority suggest[s] that such considerations are inapplicable to the damage limitation statute, which is not, strictly speaking, a statute of limitations, but a condition or limitation on a statutorily created right." *Stucki*, 963 F.2d at 363 n. 3 (citing *Peters* and *Pollen*, discussed above). Accordingly, the Federal Circuit rejected Stucki's argument

as an attempt "to create [a] legally unsubstantiated" exception to the limitation provision. *Stucki*, 963 F.2d at 365.

Although the Federal Circuit's analysis in *Stucki* could be broadly construed as an indication that 35 U.S.C. § 286 is jurisdictional in nature, its actual holding is quite narrow. It actually held only that the equitable exception which Stucki proposed was not supported by the legislative history of 35 U.S.C. § 286 or by case law. Any implication which this holding may have regarding tolling agreements would be mere dicta.

Based on the above analysis of the legislative history of the Patent Act, the six year limitation on damage actions, and the relevant case law, the Court finds that the limitation period prescribed in 35 U.S.C. § 286 is not jurisdictional and may be tolled by express contractual agreements. Such agreements do not extend the life of the patents to which they relate, but only the period for which the owner of those patents may sue for damages. Nor do they adversely effect the interests of the general public, as they are binding only on the individuals who sign them. They also do not give an unfair advantage to patent holders who have merely slept on their rights. A patent holder who negotiates such agreements, while his patents are still valid and while the party with whom he is negotiating is actively infringing them, can hardly be said to be neglecting his interests. Furthermore, tolling agreements do not unfairly prejudice alleged infringers, as they are free not to consent to them. In fact, if such agreements were found to be invalid, this could greatly prejudice patent holders, since it would allow alleged infringers to buy time by negotiating and executing tolling agreements, apparently in good faith, only to assert that these agreements were invalid years later after settlement negotiations have broken down and the patents have expired. Finally, under many circumstances, tolling agreements may facilitate settlement and thereby minimize the need for litigation.

Accordingly, NSC's Motion to Dismiss for lack of subject matter jurisdiction is DENIED. The Court finds that both the initial tolling agreement and the tolling agreement

extension entered into by Hughes and NSC are enforceable as written.

**B.** *NSC's Motion for Partial Summary Judgment and Hughes' Cross–Motion for Partial Summary Judgment*

The Court will defer its ruling on NSC's Motion for Partial Summary Judgment and Hughes' Cross–Motion for Partial Summary Judgment until it receives further briefing on the following issue: Although both the initial tolling agreement and the tolling agreement extension are fully enforceable as written, are they nevertheless irrelevant in this case because (1) they purport to toll the six-year limitation period provided under 35 U.S.C. § 286 only "until December 1, 1992" and (2) Hughes filed its Complaint on December 2, 1992.