In the Matter of the Complaint of CAMBRIA STEAMSHIP COMPANY, a corporation, as owner, and Bethlehem Steel Corporation, as Demise Charterer in Possession and Operation of the STEAMER DANIEL J. MORRELL, Her Engines, etc. for Exoneration From or Limitation of Liability.

Civ. A. No. C 67-61.

United States District Court,
N. D. Ohio, E. D.
Jan. 22, 1973.

J. Harold Traverse, Cleveland, Ohio, for claimants Chester E. Gordon and John James Cleary.

## MEMORANDUM OPINION

BATTISTI, Chief Judge:

The estate of Arthur I. Crawley, deceased, objects to the Report of The Special Masters in its disallowance of the claim for loss of prospective inheritance and in the alleged inadequacy of the award for pain and suffering. The sec-

ond claim is rejected. The first claim raises a more important issue and is deserving of analysis. This question is whether sole surviving next of kin who are the deceased's brothers and sisters and their children may receive the rights to succession which would have gone to the deceased parents had they been alive, in the absence of a surviving widow or children. Phrased differently, are the surviving brothers and sisters to be completely barred from recovering compensatory damages for the pecuniary loss of their prospective inheritance from the decedent.

In order to properly determine this claim the effect of Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) must be examined. The court adopts the report of the Masters on this question and it is incorporated herein.

### III. MORAGNE V. STATES MARINE LINES, INC.

Subsequent to the commencement of this litigation, but prior to the settlement agreement, the United States Supreme Court decided the case of Moragne v. States Marine Line, Inc., 398 U. S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). That decision recognized for the first time the existence of a "common law" action at admiralty for wrongful death. It applied this right of recovery to liability based upon the theory of unseaworthiness. In an Order dated April 2, 1972, we invited arguments and briefs from all the parties as to the applicability of the Moragne decision to these proceedings and its effect, if any.

The threshold question is whether Moragne is applicable at all in these proceedings. We have carefully examined all of the pleadings filed in this cause; and in particular, the Answers filed by the respective claimants. Without exception, each of the claimants seeks to recover (among other grounds) upon the theory of unseaworthiness. Further, in every other significant respect, each of the claims before the Special Masters is sufficiently broad to encompass a claim under the Moragne decision. Thus, the issues raised by the pleadings include liability based upon the Moragne decision.

In addition, the Moragne case was decided by the Supreme Court several months before the settlement agreement in this case was made. Thus, Moragne, together with any expansion of admiralty damages which it provides, was law at the time this case was settled. In a similar situation, the Court of Appeals has applied the Moragne decision to a case which was on appeal when Moragne was decided. See U. S. Steel Corp. v. Lamp, 436 F.2d 1256 (6th Cir., 1970).

The Order of Reference does not specify what theory of liability or measure of damage we are to apply in apportioning the settlement fund. The Order of Reference generally empowers the Special Masters to recommend an apportionment of the settlement fund on the basis of any statutory or case law applicable to the facts and issues of this case.

In view of the fact that both the pleadings and the Order of Reference encompass a consideration of Moragne-type claims, we have concluded that it would be error for us to refuse to consider such claims.

Having determined that we must consider Moragne claims in apportioning the settlement fund, we must next ascertain the proper measure of damages and class of beneficiaries entitled to recover under such claims. The Supreme Court expressly left these questions open in the Moragne decision. 398 U.S. at 406, 90 S.Ct. 1772. The Court decided to await the development of decisional law through the lower courts before speaking on this question itself.

The questions inherent in the Moragne decision have presented us with probably our most difficult problem. The Supreme Court in Moragne directed that the federal courts recognize a "common law" action for wrongful death at admiralty. In doing so it rejected the century-old rule of The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358

(1886), that no common-law action for wrongful death existed at admiralty. With the exception of the few federal cases that recognized an action for wrongful death *prior* to the *Harrisburg* and the handful of cases which have sought to interpret *Moragne,* we are without any federal case-law authority to assist us in answering the difficult problems before us.

Furthermore, the rule which was applied in *The Harrisburg* was also the Common Law of England for hundreds of years. The Common Law recognized no right of recovery for wrongful death. 3 Holdsworth, History of English Law, 676–677 (3rd Ed., 1927). The reason given for the rule was the so-called felony-merger doctrine. By virtue of this doctrine, the Common Law did not allow any civil recovery for an act that constituted both a tort and a felony. It was said that the tort was merged into or was pre-empted by the felony. See, e. g., Higgins v. Butcher, Yel. 89, 80 English Reports 61 (K.B. 1606). Originally this rule had some practical justification. The punishment for a felony in England was death for the felon and the forfeiture of his property to the Crown. Thus, after the crime had been punished, nothing remained of the felon or his property on which to base a civil action. And, since all intentional or negligent homicide was felonious, there could be no civil suit for wrongful death. Moragne v. States Marine Lines, *supra,* 398 U.S. at 382, 90 S.Ct. 1772.

Although this practical justification never existed in the United States, the American courts generally adopted the English rule as the common law of this country. Moragne v. States Marine Lines, *supra,* 398 U.S. at 384, 90 S.Ct. 1772. Eventually the incongruity of allowing a recovery for injury but not for death led Parliament to enact Lord Campbell's Act (9 & 10 Vict., C 93 Sect. 1–6, 1846), and has also moved virtually every state legislature to enact a statute allowing a recovery for wrongful death.

This history is significant to our problem in that it explains the virtual absence of any case law allowing recovery for wrongful death in the absence of statute. Indeed, except for *Moragne,* the few decisions which preceded *The Harrisburg,* and some cases in Scotland, virtually no case recognizes a "common law" action for wrongful death. Thus, there is little if any authority to which we may resort in seeking to ascertain the proper measure of damages and class of beneficiaries who can recover upon such a claim.

The *Moragne*-type claim derives from "common law" as opposed to "statute" law. It is a creation of the courts rather than the legislature. Normally in such a situation, we would look to the case law to answer questions concerning the application of such a claim. But in this case there in none, or almost none. The common law has not traditionally recognized any action for wrongful death in the absence of statute; thus, there are no cases which would describe either the measure of damages in a common-law action for wrongful death or the class of beneficiaries who are entitled to recover.

The Supreme Court, recognizing this problem, indicated that the lower courts could find "persuasive analogy for guidance" in the Death on the High Seas Act and the numerous state wrongful-death acts. Moragne v. States Marine Lines, *supra,* 398 U.S. at 408, 90 S.Ct. 1772. These, however, are not uniform. Indeed, they are somewhat diverse. See, "Wrongful Death Damages in North Carolina," 44 North Carolina Law Review 402 (1966). How is the choice to be made among such disparate provisions, all of which are of equal status; and how are the standards applicable to *Moragne* claims to be accommodated to the existing statutory scheme represented in the Jones Act and the Death on the High Seas Act?

The Supreme Court has provided some guidance as to the latter question. The Court stated that no accommodation was necessary. Congress never intended that either of the two statutes pre-empt

any portion of the field of admiralty damages. Many cases previously recognized a concurrent application of the Jones Act and the Death on the High Seas Act. See, "Annotation—Death on the High Seas Act: Right to Recovery for Death of Seamen as Affected by the Jones Act," 22 A.L.R.3rd 852. Thus, the determinations of the measure of damages and class of beneficiaries entitled to recovery under a *Moragne* claim must not rest solely upon their consistency with the Jones Act and the Death on the High Seas Act provisions.

On the other hand, we cannot disregard these two federal statutes altogether in determining the measure of damages and class of beneficiaries in *Moragne*-type claims. We must consider these generally along with the various state wrongful-death statutes in seeking to resolve these two issues. Moragne v. States Marine Lines, *supra*, 398 U.S. at 408, 90 S.Ct. 1772.

How are we to choose from among the standards set forth in the various state and federal wrongful-death statutes? The statutes themselves are varied; they are inconsistent; they are all of equal authority. See 44 North Carolina Law Review, *supra*, at 402. We have been able to glean three basic guidelines from the *Moragne* decision itself:

1) The determination should not be tailored to accommodate the operation of the federal wrongful-death statutes. (See above)

2) The standards that are adopted must be uniform in application to all cases decided under admiralty jurisdiction. Moragne v. States Marine Lines, *supra*, 398 U.S. at 396, 401, 90 S.Ct. 1772; see also U. S. Steel v. Lamp, 436 F.2d 1256 (6th Cir., 1970).

3) We must look to congressional and legislative policy, as reflected in existing wrongful-death statutes, as articulating generally-accepted objects of concern to our society and generally-accepted methods of protecting those objects of concern. Moragne v. States Marine Lines, *supra*, 398 U.S. at 408, 90 S.Ct. 1772.

■ These guidelines require us to reject those cases applying *Moragne* which have utilized only the state wrongful-death statute applicable to the place of injury. See, e. g., Spiller v. Thomas M. Lowe and Associates, Inc., D.C., 328 F.Supp. 54 (1971). Indeed, where recovery is available under *Moragne*, recovery under a state wrongful-death statute is precluded. U. S. Steel v. Lamp, 436 F.2d 1256 at 1279 (6th Cir., 1970); Dennis v. Central Gulf Steamship Corp., 323 F.Supp. 943 (E.D. La.1971), affirmed 453 F.2d 137 (5th Cir., 1972); Petition of Canal Barge Company, 323 F.Supp. 805 (N.D.Miss., 1971); see "Admiralty—The Proper Measure of Recovery under the Newly-Created General Maritime Law for Wrongful Death," 25 Ark.Law Rev. 512 (1972).

The real question is: how are we to weigh the various state and federal wrongful-death statutes in determining the proper measure of damages and class of beneficiaries in *Moragne* claims. This question is best answered by an articulation of the reason for referring to these statutes in the first place. The Supreme Court, in recognizing the existence of the *Moragne*-type claim, considered the various wrongful-death statutes as the expression of a general public policy and societal concern:

"These numerous and broadly applicable statutes, taken as a whole, make it clear that there is no present public policy against allowing recovery for wrongful death. The statutes evidence a wide rejection by the legislatures of whatever justifications may once have existed for a general refusal to allow such recovery. This legislative establishment of a policy carries significance beyond the particular scope of each of the statutes involved. The policy thus established has become itself a part of our law, to be given its appropriate weight not only in matter of statutory construction but also in those of decisional law." 398 U.S. at 390–391, 90 S.Ct. at 1782.

A little later the Court said:

"This appreciation of the broader role played by legislation in the development of the law reflects the practices of common-law courts from the most ancient times. As Professor Landis has said, 'much of what is ordinarily regarded as "common law" finds its source in legislative enactment.' Landis, *supra*, at 214. It has always been the duty of the common law court to perceive the impact of major legislative innovations and to interweave the new legislative policies with the inherited body of common law principles— many of them deriving from earlier legislative exertions." 398 U.S. at 392, 90 S.Ct. at 1783.

We must, therefore, consider various state and federal wrongful-death statutes as the expression of a societal policy of concern for a given class of individuals and as a desire to provide them with a certain measure of protection. Thus, we must examine these various statutes and determine whether we can detect a general policy of concern for certain individuals, as opposed to others, and a general desire to provide one measure of protection as opposed to another.

Let us consider first the question of what beneficiaries are generally given a right to recover. The most comprehensive summary of wrongful-death statutes is found in 44 North Carolina Law Review 402, an article entitled "Wrongful Death Damages in North Carolina." As the article indicates, twenty-seven statutes provide for exclusive classes of beneficiaries, limiting recovery to these. Six states utilize the laws of intestate succession to determine beneficiaries, and four others allow recovery to the decedent's "heirs." One statute specifies that the estate of the deceased is to receive the recovery. Forty-one jurisdictions expressly provide for recovery by the surviving spouse, and twenty-seven expressly provide for recovery by the surviving spouse and any children. (Fourteen statutes makes this an exclusive class). Nine statutes allow recovery

by the parents. Only three statutes permit recovery by non-dependent relatives. The Jones Act permits recovery by the wife and children of the deceased, and if none, then the parents of the deceased, and if none in either case, then by the dependent relatives of the deceased. The Death on the High Seas Act permits recovery by all three of these classes concurrently.

While we look to the pattern of these state and federal wrongful-death statutes to provide a guideline for our determination, we must not make that determination based upon numbers alone. Other considerations are also important, and indeed, their importance has been demonstrated in the cases before us. The various statutes must be considered in terms of their applicability to maritime problems, their logic and internal consistency, and the degree to which they represent generally-accepted norms and values.

After examining these various laws, we have concluded that the federal wrongful-death statutes must be weighed heavily in our determination. We reach this conclusion for several reasons. First of all, they were enacted by a legislature representing all people in all sections of the nation. These statutes represent, perhaps more broadly, the feeling of our society upon these various problems. Second, they were enacted specifically to deal with maritime subjects. Third, their similarity and longevity indicate a strong, well-established, congressional policy on these matters. Fourth, the classes of beneficiaries specified in the federal statutes are more consistent with the measure of damages which they utilize, i. e., pecuniary loss to the beneficiaries, than are some of the state statutes. For example, a statute which measures damage by pecuniary loss, yet excludes from recovery a dependent parent of the deceased, suffers from an obvious internal inconsistency. The parent has suffered a pecuniary loss, yet he is barred from relief. The federal statutes on the other

hand allow recovery for *all* pecuniary losses, at least for those relatives who are actually dependent to a greater or lesser degree.

Furthermore, the classes of beneficiaries defined in the federal statutes appear to be very realistic in application, particularly to the situation of seamen. The nature of their occupation requires that seamen be absent from their homes for a considerable period of time. Indeed, many of them have no home except for the ship. Thus, many seamen never marry. At the same time, as we have seen in the claims before us, they use their earnings to assist their parents or other members of their family. Thus, in the particular case of seamen, parents and dependent relatives are commonly beneficiaries and should not be excluded from recovery. Indeed, to restrict recovery to the wife or children of the decedent would be to exclude large numbers of beneficiaries who are truly dependent upon the deceased and who suffer a pecuniary loss by his death, sometimes, in fact, a more substantial loss than would be suffered by the decedent's wife or children. Thus, the several state wrongful-death statutes that restrict recovery to the decedent's wife and children appear to have adopted a viewpoint that does not adequately cover all those persons who may suffer an actual pecuniary loss.

The federal statutes exclude non-dependent relatives. That exclusion is reflected in all of the state wrongful-death statutes (with three exceptions). This consistent exclusion appears to represent a generally-accepted value judgment that the interest of non-dependent relatives is not of such concern as compared to dependent relatives. Thus, the various wrongful-death statutes have, almost without exception, failed to protect the interest of non-dependent relatives.

The situation of non-dependent relatives is clearly presented in three of the cases before us. Captain Crawley, Master of the *Morrell*, was unmarried. He is survived by several brothers and sisters and their children, none of whom claim to have been dependent upon him. On the other hand, Captain Crawley had a substantial income and placed a large portion of this income into savings each year. It is likely that if he had survived to a normal retirement age, he would have left a substantial estate to these relatives.

Henry Rischmiller was in a similar situation. He was unmarried and is survived only by his brother, who was not dependent upon him in any way. On the other hand, Mr. Rischmiller saved a substantial portion of his earnings, and it is likely that if he had lived to a normal age, he would have left a considerable estate to his brother.

A somewhat different situation is presented by the case of Nicholas Homich. Mr. Homich is survived by some relatives who actually depended upon him for a portion of their normal living expenses, but he is also survived by several others to whom he made frequent gifts. We have determined that in most situations the relatives receiving these gifts were not "dependent" upon them, but rather accepted them merely as expressions of affection.

 We have concluded that there can be no recovery under a *Moragne*-type claim for non-dependent relatives. Such a recovery would contravene the long and well-established congressional policy in this area and would be inconsistent with the expression represented in the vast majority of state wrongful-death statutes, which prohibit such a recovery. In addition, any recovery by non-dependent relatives is, by its very nature, speculative. Such a recovery would of necessity be based upon a prediction of the future intentions and family relationships of the deceased. A non-dependent relative's recovery would of necessity be based solely upon his prediction that the deceased would have made un-solicited gifts to him in the future, regardless of his need, or would have designated him as a beneficiary of

his estate. And it would also be based upon the prediction that the deceased would not have expended his savings for his own benefit during his lifetime. At the very best, such predictions involve speculative prognostications of a much more unreliable and chance character than those required in dependency claims, where there will usually be an established need of support or a legal obligation.

We see the various federal and state wrongful death statutes as expressing a societal decision that the interest of non-dependent relatives is not so substantial as to require protection. The non-dependent relative is, by definition, independent of any contributions from the deceased. Anything which he would receive at the time of the deceased's natural death, or by way of gifts during his lifetime, or by way of judgment in the event of the deceased's unnatural death, is a happy windfall. That situation is to be distinguished from the situation of a dependent relative, who suffers a real change in his living standard by reason of the deceased's death and who must look to the law for protection. Indeed, in many cases recovery of damages for the wrongful-death may be the dependent relative's only means to avoid becoming a public charge.

■ We have determined that the class of beneficiaries defined by the Death on the High Seas Act provides the most appropriate, generally-accepted, and logically-consistent class of beneficiaries for maritime wrongful death claims. We have determined to utilize that definition in deciding all *Moragne*-type claims asserted in this litigation. Several other courts have utilized the same standard, although for different reasons. Green v. Ross, 338 F.Supp. 365 (S.D.Fla., 1972); Guilbeau v. Calzada, 240 So.2d 104 (La.App., 1970).

■ We have also determined that the "pecuniary loss" standard, provided in both the Jones Act and the Death on the High Seas Act, is the measure of damages which we must utilize in *Moragne*-type claims. Forty-three jurisdictions utilize loss to survivors as the measure of damages in their wrongful-death statutes. Seven utilize the loss to the estate as the measure of damages. Two utilize a combination of both standards. Two measure damages by the culpability of the decedent, and one measures damages by loss to the decedent himself.

The prevalent measure of damages in the United States is the loss-to-beneficiary test. Indeed, this test seems to reflect the basic concern of wrongful death statutes generally, i. e., the protection of those who suffer or are damaged by reason of the death.

Of the states that measure damages by the loss to survivors, twelve allow damages based upon the amount of actual past contributions of the decedent, together with the value of any services he rendered to the beneficiary. Seventeen states add loss of love and affection to the above items. Eight states allow recovery for the beneficiary's grief and mental anguish, in addition to the above items.

■ Since the vast majority of wrongful-death statutes allow recovery for pecuniary loss based upon actual cash contributions of the decedent, together with the services which he rendered to the beneficiary, there is little question but that these items must be allowed as elements of damage under *Moragne*. A more difficult question, however, is whether damages should be limited to those of a pecuniary nature, or expanded to include the loss of the decedent's love and affection and the survivor's grief and mental anguish. A majority of the states permit such recovery, and indeed, at least one federal case has also allowed it under *Moragne*. See: In the Matter of Sincere Navigation Corporation, 329 F.Supp. 652 (E.D. La., 1971).

We believe that these latter elements of damage are not recoverable under *Moragne*.[1] We have so concluded for several reasons. First of all, the federal rule allowing recovery only for pecuniary loss is of long-standing and is well-established. Early interpretations of both the Jones Act and the Death on the High Seas Act, not to mention the Federal Employers' Liability Act, all limited those statutes to pecuniary-type damages. And, during the many years that these statutes have been in force, Congress has not seen fit to amend them to include additional elements of damage. This long history seems to represent a strong, or at least consistent, federal policy in favor of pecuniary-type damages as opposed to the other, more speculative, elements.

In addition, this federal policy is derived from an interpretation of three statutes that allow recovery for a beneficiary's "damages." The Jones Act, the Death on the High Seas Act, and the Federal Employer's Liability Act do not use the term "pecuniary loss." Rather, they use the term "damages." Recovery is allowed for any "damages" suffered by the beneficiary due to the decedent's death. It is the courts that have interpreted the term "damages" to mean only damages of a pecuniary nature. This interpretation is significant, because in those statutes which allow recovery for items such as love and affection and grief and mental anguish, these elements of damage are often specifically mentioned as being recoverable.

We must weigh the long-standing federal policy in this area more heavily than the various state statutes which have allowed a recovery for loss of love and affection and grief and mental anguish. To hold otherwise would be to disregard the need for uniformity which is expressly sought in the *Moragne* decision. Indeed, the one case which has allowed recovery of the questionable items has acknowledged this difficulty. See, In re Sincere Navigation Corporation, *supra*, 329 F.Supp. at 657. We, therefore, hold that the measure of damages specified in the Jones Act and the Death on the High Seas Act is applicable to claims made under the *Moragne* decision.[2]

The claimant contends that the result reached by the Co-Masters in this cause is contra to the decision of this court in Marsh, Admx. v. Buckeye Steamship, 330 F.Supp. 972 (N.D.Ohio 1971). In that case it was noted that the courts could fashion a general maritime rule in actions for wrongful death. The approach taken by the Masters and adopted by this court are not in conflict with the decision in Marsh. Therefore the objections of this claimant are overruled.

It is so ordered.

---

1. This ruling is supported by several recent decisions applying *Moragne*: Mascuilli v. United States, 343 F.Supp. 439 (E.D.Pa. 1972) ; Petition of Canal Barge Company, 323 F.Supp. 805 (N.D.Miss., 1971) ; Green v. Ross, 338 F.Supp. 365 (S.D. Fla., 1972).

2. We express no opinion on the recoverability of funeral expenses. No claim has sought recovery for such expenses.