In re Complaint of **AMERICAN COMMERCIAL LINES, INC.**, as owner of the **MOTOR VESSEL JAMES L. HAMILTON**, and Commercial Transport Corporation, as owner of the **MOTOR VESSEL La SALLE**, and Inland Tugs Co., as Demise Charterer and Bailee in Possession of the Motor Vessel James L. Hamilton and Motor Vessel La Salle for Exoneration from or Limitation of Liability.

No. 1628.

United States District Court,
E. D. Kentucky,
Covington Division.

Nov. 8, 1973.

See also, D.C., 353 F.Supp. 872.

---

Robert E. Wohlwender, Covington, Ky., Bloom, Greene & Uible Co., L.P.A. Cincinnati, Ohio, Ray, Robinson, Keenen & Hanninen, Cleveland, Ohio, for American Commercial Lines, Inc., Commercial Transport Corp. and Inland Tugs Co.

## MEMORANDUM

SWINFORD, District Judge.

The record is before the court for resolution of the appropriate measure of damages. The claimants in this action originally commenced in state court on negligence grounds argue that the Kentucky Wrongful Death Statutes should govern, while the plaintiffs (hereinafter: barge lines) contend that the measure of damages should be ascertained with reference to general maritime law and relevant federal statutes.

The parties appear to agree that the quantum of damages under the Kentucky statutes would be greater than that permitted by general maritime law. In Kentucky death cases, recovery is based upon the decedent's future earning power, see K.R.S. 411.130; Rice v. Rizk,

Ky., 453 S.W.2d 732, 735 (1970); City of Louisville v. Stuckenborg, Ky., 438 S.W.2d 94, 98 (1969); Humble v. Mountain State Construction Company, 6th Cir., 441 F.2d 816, 818 (1971). Damages may also be assessed for the loss of affection and companionship occasioned by the death of a child, K.R.S. 411.135; loss of consortium, K.R.S. 411.145; and funeral expenses, Square Deal Cartage Company v. Smith's Adm'r, 307 Ky. 135, 210 S.W.2d 340 (1948). Where, as here, juveniles and wives were among the fatalities, compensatory amounts would be substantial.

Application of federal statutes governing maritime deaths would result in a much smaller award. For example, the Death on the High Seas Act, 46 U.S.C. § 761 et seq. (hereinafter: DOHSA), applicable in actions for death outside state territorial waters, limits recovery to actual pecuniary loss:

"The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought." 46 U.S.C. § 762.

An example of the calculation of damages under the "pecuniary loss" test utilized by this statute is found in Dugas v. National Aircraft Corporation, E.D. Pa., 340 F.Supp. 324 (1972), where the court considered not the anticipated lifetime earnings, but an approximation of the monetary aid contributed by the adolescent decedents to the suing representative. General maritime law also denies recovery for loss of companionship, affection, and consortium, see Petition of United States Steel Corporation, 6th Cir., 436 F.2d 1256 (1970) cert. denied 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153 (1971); Igneri v. CIE de Transports Oceaniques, 2d Cir., 323 F.2d 257 (1963) cert. denied 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964), as well

as funeral expenses, The Culberson, 3d Cir., 61 F.2d 194 (1932).

A resolution of this issue requires an examination of Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), an unseaworthiness action engendered by the death of a longshoreman working on a vessel within Florida's territorial waters. The Court of Appeals, relying on The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959), and The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), rejected the plaintiff's claim on the ground that maritime law denies recovery for death occurring in state territorial waters, and Florida negligence law did not recognize unseaworthiness as a cause of action. Reversing, the Supreme Court condemned The Harrisburg, supra, as "an unjustifiable anomaly in the present maritime law", 398 U.S. at 378, 90 S.Ct. at 1776, and ruled that neither the common law nor the federal remedial statutes justified preclusion of wrongful death recovery under general maritime law:

> "Where death is caused by the breach of a duty imposed by federal maritime law, Congress has established a policy favoring recovery in the absence of a legislative direction to exclude a particular class of cases." Id. at 393, 90 S.Ct. at 1783.

In creating a federal right of recovery, the Court admitted that the formulation of an appropriate measure of damages was among the many corollary problems spawned by its decision, but deferred analysis of this process pending discussion by the lower federal courts:

> "If still other subsidiary issues should require resolution, such as particular questions of the measure of damages, the courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful-death acts have been implemented with success for decades. The experience thus built up counsels that a suit for

wrongful death raises no problems unlike those that have long been grist for the judicial mill." Id. at 408, 90 S.Ct. at 1792.

The barge lines contend that the language quoted above merely authorizes reference to consistent state laws as guides. Where, as here, conflict exists between federal maritime law and state wrongful death provisions, principles of national uniformity dictate that the former prevail.

The claimants, pouncing upon the Moragne language recommending guidance by state wrongful death statutes, argue that issues involving the deaths of nonseamen within a state's waters should be governed by local law and not by rules designed to compensate employees on unseaworthiness theories. The extension of general maritime law to embrace wrongful death in territorial waters was intended to accommodate recovery for maritime deaths, not abrogate existing state remedies. The argument propounded by the barge lines is rebutted by cases holding that uniformity dictates are not infringed by the application of state rules allowing elements of recovery not permitted under federal law:

> "The 'uniformity' that is fundamental in maritime law has to do with the bases of liability, not with differing elements of damages that may be recoverable in differing circumstances with differing classes of beneficiaries." Dennis v. Central Gulf Steamship Corporation, 5th Cir., 453 F.2d 137, 140 (1972) cert. denied 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218 (1972).

The continued viability of local laws is reflected by statutory declarations that parallel state legislation is not disturbed by the enactment of federal provisions:

> "The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter." 46 U.S.C. § 767.

A congressional desire to pre-empt local remedies would presumably have been effectuated by precise legislative or judicial language. Where, as here, the formulation of rules governing recovery is expressly deferred, there can be no clash with uniformity precepts:

> "The doctrine of uniformity, as a constitutional doctrine, is inapplicable to the issue of damages under *Moragne*. The doctrine, first enunciated in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), holds that a state law is invalid 'where it actually conflicts with the general maritime law or federal statutes.' . . . Here there is no conflict between state and federal law, because as yet there is no federal law on the issue. The task of deciding damages for wrongful death under general maritime law was left, in the first instance, to the lower federal courts." Greene v. Vantage Steamship Corporation, 4th Cir., 466 F.2d 159, 165 (1972).

The claimants' position merits both logical and sympathetic appeal. However, a foray into the relationship of Moragne, the uniformity doctrine, and statutory rules is unnecessary since a contrary position has been espoused by the Sixth Circuit Court of Appeals in Petition of United States Steel Corporation, supra. That decision was generated by the deaths of numerous seamen employed aboard *The Cedarville* by U. S. Steel following the collision of that vessel with one owned and operated by Den Norske. The claims against U. S. Steel were predicated upon the Jones Act, 46 U.S.C. § 688, and are not relevant to the inquiry herein; however, the Court did devote considerable attention to the measure of damages recoverable against Den Norske:

> "The basis for corresponding claims against defendant Den Norske was the general maritime law as supplemented by the Michigan Wrongful Death Act . . ., because of the absence of any employer-employee relationship between the decedents and Den Norske and the occurrence of the accident within the territorial waters of the State of Michigan." Id., 436 F.2d at 1276.

Widows and children sought damages under the Michigan Wrongful Death Act, M.C.L.A. Section 600.2922, for loss of consortium, affection, and companionship. Den Norske relied upon general maritime law, which precludes recovery for these elements. Thus, the issue before the Court of Appeals was identical to that presented in the case at bar: whether local legislation or general maritime law should determine the measure of damages in actions brought by non-employees for deaths within a state's territorial waters.

The Court resolved this issue through an examination of the effect of Moragne upon earlier admiralty concepts. The restrictive principles of recovery announced in The Harrisburg, supra, yielded numerous judicial exceptions designed to provide a more equitable result in death actions. In Western Fuel Company v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921), it was decreed that admiralty courts could entertain suits for wrongful death occurring in territorial waters where the law of the locus allowed such a right of action. The Moragne decision abrogated the necessity for this exception:

> "Creation of a right of recovery for wrongful death under the maritime law eliminates the need for both the exception to the rule denying recovery and for the tests designed to implement that exception and permits all facets of that right of recovery, including the measure of damages, to be governed by the principles of the maritime law." Id., 436 F.2d at 1279.

The doctrine of uniformity would be violated by a sustained application of state law following the creation of a new federal remedy.

> "Recognition of a right of recovery for wrongful death under the general maritime law strongly dictates that in

order to promote the uniformity and supremacy of the maritime law . . ., the measure of recovery must be by the principles of that law where, as here, there is a conflict between the damages recoverable under the general maritime law . . . and those recoverable under state law . . ." Id.

The Court can perceive no reason for ignoring this unequivocal mandate by the Court of Appeals. Both this case and that before the Sixth Circuit involved actions initially predicated upon a state wrongful death act; both presented claims by nonemployees for death on territorial waters. Despite this similarity, it is arguable that Petition of U. S. Steel is not entirely applicable because the Court of Appeals was concerned with the propriety of damages for loss of consortium, affection, and companionship, rather than the relative applicability of the pecuniary loss or cessation of earning power tests. However, the Moragne holding as implemented by the pronouncements of the Court of Appeals strongly suggest that the federal statutory rule applying the pecuniary loss test be determinative of this question as well.

As noted above, Moragne suggested that the appropriate measure of damages be reached by reference to state wrongful death legislation and the DOHSA:

"Both the Death on the High Seas Act and the numerous state wrongful death acts have been implemented with success for decades." 398 U.S. at 408, 90 S.Ct. at 1792.

The Sixth Circuit interpreted this language as authorizing reference to state provisions only where the uniformity doctrine is not impinged by a local rule contrary to federal law. 436 F.2d at 1279. Where, as here, the DOHSA and Kentucky law utilize different standards, the former must prevail.

Some difficulty in utilizing the DOHSA is encountered because the Court of Appeals did not refer to it directly, but instead to "general maritime law". Analysis of this terminology reveals that the "general maritime law" mentioned in that case is in reality a creature of the DOHSA and the Jones Act. The cases cited by the Sixth Circuit as expressive of the posture of "general maritime law" relied heavily on those federal statutes. For example, in Igneri v. CIE de Transports Oceaniques, supra, Judge Friendly studied the Jones Act in denying the wife of a negligently injured seaman recovery for loss of consortium, Id., 323 F.2d at 266–267. See also Simpson v. Knut Knutsen, O.A. S., N.D.Cal., 296 F.Supp. 1308 (1969), modified 9th Cir., 444 F.2d 523 (1971); Valitutto v. D/S I/D Garonne, S.D.N. Y., 295 F.Supp. 764 (1969). Further, Petition of U. S. Steel was interpreted by the Fourth Circuit as equating general maritime law with the DOHSA:

"(T)he court did not specifically state what was the measure of damages under general maritime law . . . Presumably . . . the sixth circuit . . . felt that the proper measure was that embodied in the DOHSA." Greene v. Vantage Steamship Corporation, supra, 466 F.2d at 164 (1972).

The claimants' argument that reliance on the DOHSA would be improper in view of its limited application to extraterritorial waters was rebuffed by language in Moragne especially permitting its use in such cases. 398 U.S. at 408, 90 S.Ct. 1772, 26 L.Ed.2d 339. Noting that comment, the court in In Re Cambria Steamship Company, N.D.Ohio, 353 F.Supp. 691 (1973), concluded that the DOHSA best reflected the uniformity preferred in admiralty matters:

"First of all, they were enacted by a legislature representing all people in all sections of the nation. These statutes represent, perhaps more broadly, the feeling of our society upon these various problems. Second, they were enacted specifically to deal with maritime subjects. Third, their similarity and longevity indicate a strong, well-

established, congressional policy on these matters." Id. at 695.

That case held that the pecuniary loss standard expressed in the federal enactments would be applied instead of the loss of earning power test utilized by some states. Id. at 697–698.

This court concludes that the decisions analyzed above require application of the measure of damages enunciated in the Death on the High Seas Act.