**CONSTRUCTION AGGREGATES CORPORATION, Plaintiff,**

v.

**S. S. AZALEA CITY, her engines, boilers, etc., and Sea-Land Service, Inc., Defendants.**

**Civ. A. No. 74–523.**

United States District Court,
D. New Jersey.
Feb. 19, 1975.

Healy & Baillie, New York City, McCarter & English, Newark, N.J., for plaintiff.

Romano, Hehl & Romankow, Union, N.J., Haight, Gardner, Poor & Havens, New York City, for defendants.

## OPINION AND ORDER

WHIPPLE, Chief Judge.

This matter is before the Court on defendants' motion to transfer this action from this Court to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. § 1404(a). The action is to recover damages as a result of a ship's anchor striking plaintiff's equipment in a navigation channel in San Juan Harbor, Puerto Rico, in September, 1971.

The complaint alleges that at the time of the accident plaintiff was engaged in dredging operations in Puerto Rican waters. The S.S. "Azalea City" was alleged to have negligently "dropped her anchor and dragged it across plaintiff's pipeline." A compulsory pilot was at the ship's controls at the time. Sea-Land defends this action based upon the fact that the Azalea City was "embarrassed" by a tug (Sea Lion) and barge (Coastwise No. 2) causing those in charge of the navigation of the Azalea City to place its engines full astern and drop its anchor. The dropping of the anchor was allegedly done to avoid a collision. Sea-Land alleges that the tug violated several rules of the road and it wishes to seek indemnity from the owners of the tug and barge.

Plaintiff brought this action in New Jersey because it "was required to attach the Azalea City within the jurisdiction of this Court to obtain full relief." This is alleged in light of the rule that a shipowner cannot be held personally liable for the fault of a compulsory pilot. *Homer Ramsdell Transportation Co. v. Compagnie Generale Transatlantique*, 182 U.S. 406, 21 S.Ct. 931, 45 L.Ed. 1155 (1901). The ship remains liable *in*

*rem* for the compulsory pilot's fault. *The China*, 74 U.S. [7 Wall.] 53, 19 L. Ed. 67 (1868). The suit *in rem* against the vessel, it is alleged, was an important, necessary and substantial element of the action. Since the vessel was in, New Jersey at the time this action was instituted, an action could not "have been brought" against the vessel in Puerto Rico, a requirement to transfer under 28 U.S.C. § 1404(a).

■ Sea-Land asks that this action be transferred to Puerto Rico for the convenience of the parties and witnesses involved, to compel the attendance of witnesses, and to allow one court to decide all the issues between three parties from one central nucleus of facts. Despite plaintiff's counter-arguments, it appears to the Court that a transfer to Puerto Rico would be in the interest of justice. This raises the question of whether the Court in Puerto Rico would have jurisdiction of this action and, if so, would plaintiff in any way be prejudiced by such transfer?

In light of a letter of undertaking given to plaintiff by defendant, which is in effect a substitute for the vessel, coupled with defendants' agreement to admit the *in rem* jurisdiction of the Puerto Rican Court, the transferee court would undoubtedly have jurisdiction. *See J. K. Welding Co. v. Gotham Marine Corp.*, 47 F.2d 332, 335 (S.D.N.Y.1931).

The Supreme Court in *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1504 (1960) considered a problem similar to that *sub judice*. In that case, the plaintiff brought an admiralty libel *in rem* against the barge, and an *in personam* libel against the barge owner, for the negligent sinking of a barge loaded with plaintiff's grain. At the time the action was brought, the barge was located in the transferor's district and a stipulation for value was entered (as in the present case). *In personam* jurisdiction was available in the transferee jurisdiction at the time suit was commenced, but, as in

the present case, a libel *in rem* could not have been brought there because the barge was in the transferor's district. The Court granted defendant's motion to transfer despite the plaintiff's claim that "since the barge was in [the transferor jurisdiction] when this 'civil action' was brought and the admiralty *in rem* claim therefore could not have been brought in [the transferee jurisdiction] at that time; the entire civil action must remain in the inconvenient [transferor] forum." 364 U.S. at 22, 80 S.Ct. at 1473.

■ The Court stated that the practical economic fact of the matter was that the plaintiff's *in rem* and *in personam* claims actually constituted inseparable parts of one single civil action against the barge owner. 364 U.S. at 26–27, 80 S.Ct. 1470. The libel *in rem* against the barge was held to be a "longstanding admiralty fiction" and "a fiction born to provide convenient forums should not be transferred into a weapon to defeat that very purpose." 364 U.S. at 23, 80 S.Ct. at 1473.

> The idea behind § 1404(a) is that where a "civil action" to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court.

364 U.S. at 26, 80 S.Ct. at 1475. It is thus clear from the foregoing that the technical distinction of an *in rem* action will not bar the transfer of a case when the interests of justice dictate such transfer.

Plaintiff expresses concern that its position will be prejudiced by a transfer to Puerto Rico since its substantive law differs from that of New Jersey. This precise issue was considered by the Supreme Court in *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The Court stated that

where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.

376 U.S. at 639, 84 S.Ct. at 821. It is clear to this Court that a transfer to Puerto Rico will in no way change the substantive law to be used, since only the courtrooms will have changed.

■ More specifically, plaintiff is apprehensive that its complaint may be dismissed if the transferee court decides to utilize Puerto Rico's one year statute of limitations for tort actions. It does not seem to this Court, however, that such prospect should cause the plaintiff undue alarm. Whether or not an admiralty action is timely brought is determined by the equitable doctrine of laches rather than by state or local statutes of limitations. *Finley v. United States,* 244 F.2d 125 (3rd Cir. 1957); *Kane v. Union of Soviet Socialist Republics,* 189 F.2d 303 (3rd Cir. 1951). Laches is a flexible measure of time within which an admiralty action must be brought and no specific time limit is set. When there has been no inexcusable delay in seeking a remedy and no prejudice to the respondent has ensued from the mere passage of time there should be no bar to relief. *McMahon v. Pan American World Airways, Inc.,* 297 F.2d 268 (5th Cir. 1962); *Loverich v. Warner Co.,* 118 F.2d 690, 693 (3rd Cir. 1941), *cert. denied,* 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535. A Court may, however, utilize relevant state statutes of limitations by analogy as yardsticks to determine whether laches applies. A rebuttable presumption arises that any libel brought after the running of the state statute of limitations was inexcusably delayed and that such delay is prejudicial to the respondent. *United New York Sandy Hook Pilots Association v. Rodermond Industries, Inc.,* 394 F.2d 65 (3rd

Cir. 1968); *Kane v. Union of Soviet Socialist Republics, supra; Loverich v. Warner Co., supra.*

■ The question is thus raised as to which state statute will be applied by analogy in a case, such as this, where there is a transfer of venue pursuant to 28 U.S.C. § 1404(a).

In *Gomez v. The S. S. Dorothy,* 183 F.Supp. 499 (D.P.R.1959), a longshoreman instituted an action in the United States District Court for the Southern District of New York for personal injuries sustained while loading a ship in Puerto Rico. The action was then transferred to the District of Puerto Rico pursuant to the provisions of 28 U.S.C. § 1404(a). The transferee court dealt with the problem of which statute of limitations it would use by way of analogy—that of New York or that of Puerto Rico. The Court held that the New York statute of limitations should be utilized and further observed:

> This is true despite the unconditional character of the transfer of the action to the court for disposition. It must not be forgotten that it was properly brought in New York, and that it rests upon a claim arising not under the law of Puerto Rico but by virtue of American maritime law. *Pope & Talbot, Inc. v. Hawn,* [346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143]; *LeGate v. The Panamolga,* [2 Cir., 221 F.2d 689]; *May v. Steel Navigator,* D.C. N.Y., 152 F.Supp. 254. As is at once apparent from the LeGate opinion, there was no delay beyond the applible statutory period under New York law in the institution of this case.

183 F.Supp. at 512.

Based on the reasoning in the *Gomez* case, it is the opinion of this Court that the six year New Jersey tort statute of limitations should be utilized as a yardstick in this action to determine whether laches applies.

In light of the above, it is this Court's opinion that the interests of justice

dictate that this action be transferred to the United States District Court in Puerto Rico, pursuant to 28 U.S.C. § 1404(a).

So ordered.