ESTATE of George L. KAUZLARICH by his Administratrix C. T. A., Judy L. Monaghan, Plaintiff,

v.

EXXON COMPANY, USA, Defendant.

Civ. A. No. 75–518.

United States District Court,
D. South Carolina,
Charleston Division.

Dec. 2, 1975.

A. Arthur Rosenblum, Charleston, S. C., for plaintiff.

William H. Grimball, Charleston, S. C., for defendant.

## ORDER

BLATT, District Judge.

Plaintiff's intestate, George L. Kauzlarich, allegedly came to his wrongful death on February 12, 1971, while employed aboard the defendant's vessel, S/S Esso New Orleans, when said vessel was on the high seas in the Gulf of Mexico approximately 83 miles from land. The above entitled action was instituted on April 1, 1975, more than four (4) years after the death of plaintiff's intestate, the complaint alleging that the deceased's wrongful death was due to the negligence of the defendant's agents, servants, and employees, and, additionally, due to the unseaworthiness of the defendant's vessel. The complaint alleges further that this action is brought under the applicable statutes of the United States and under the general maritime law. Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that the general maritime law applies only to suits for wrongful death within state territorial waters, and that the statutes under which this action could properly have been brought, namely the Jones Act, 46 U.S.C. § 688, and/or the Death on the High Seas Act, hereinafter denominated DOHSA, 46 U. S.C. § 761 et seq., contain limitations of three and two years, respectively, thereby barring this suit. Furthermore, the defendant urges that should the court hold that general maritime law does provide a cause of action for wrongful death occurring outside of state territorial waters, the two-year limitation period in DOHSA, or the three-year Jones Act limitation period, should be applied with equal force to a suit instituted under the general maritime law for wrongful death occurring there, which limitation would likewise bar the instant action.

Prior to the decision by the United States Supreme Court in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), a cause of action for wrongful death of a seaman arising outside of state territorial waters based on unseaworthiness and/or negligence could be instituted only under the provisions of DOHSA or the Jones Act, as the Supreme Court in the case of *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), had held that general maritime law failed to provide a cause of action for wrongful death. However, the courts had long recognized that a cause of action for wrongful death within state territorial waters was available, the conditions under which such suits could be brought being dependent upon the terms and coverage of the wrongful death act of the state in whose territorial waters

the death occurred. In *Moragne,* which expressly overruled *The Harrisburg,* a cause of action under general maritime law based on violation of maritime duties was recognized to exist, but the Supreme Court in *Moragne* left unsettled many subsidiary issues, such as whether the action existed for death occurring on the high seas as well as within state territorial waters, the time limitation in which such a wrongful death action could be brought, and the beneficiaries and measure of damages in such actions. In connection with these questions, the *Moragne* court left their final resolution to a "further sifting through the lower courts in future litigation." 398 U.S., at page 408, 90 S.Ct. at p. 1792. Thus, the two issues here involved, first, whether a wrongful death action occurring on the high seas—outside of state territorial waters—can be brought under the general maritime law or whether such an action is tied inexorably to DOHSA, and, second, assuming that actions developed under *Moragne* can be brought for deaths arising on the high seas, the appropriate time limitation to be applied in such actions. The effect of the *Moragne* decision on wrongful death actions occurring on the high seas was not mentioned by the Court, but the limitation period to be applied under the general maritime law in *Moragne*-type actions was discussed, and at page 406 of 398 U.S., 90 S.Ct. at p. 1791, the Court said:

"Respondents argue, for example, that a statute of limitations must be devised or 'borrowed' for the new wrongful-death claim. However, petitioner and the United States respond that since we have simply removed the barrier to general maritime actions for fatal injuries, there is no reason —in federal admiralty suits at least —that such actions should not share the doctrine of laches immemorially applied to admiralty claims. In applying that doctrine, the argument runs, the courts should give consideration to the two-year statute of limitations in the Death on the High Seas Act, just as they have always looked for analogy to appropriate state or foreign statutes of limitations. See *Kenney v. Trinidad Corp.,* 349 F.2d 832, 840 (C. A. 5th Cir. 1965); *Gilmore and Black, supra,* at 296 n. 149, 628. We need not decide this question now, because the present case was brought within a few months of the accident and no question of timeliness has been raised. The argument demonstrates, however, that the difficulties should be slight in applying accepted maritime law to actions for wrongful death."

The few courts which have considered the question of whether the *Moragne* decision authorizes wrongful death actions occurring on the high seas have deen divided. In *McPherson v. Steamship South African Pioneer,* 321 F.Supp. 42, 47, the then Chief Judge of the Eastern District of Virginia, the Honorable Walter E. Hoffman, held that the *Moragne* decision permitted recovery for death under general maritime law only when such death occurred in state territorial waters. Thereafter, in *Tialigo v. Steffany,* 1975 A.M.C. 1549, an associate justice of the High Court of American Samoa, in a case brought under general maritime law for wrongful death on the high seas, stated at page 1551 of 1975 A.M.C.:

"Few courts have squarely faced the issue of whether the Death on the High Seas Act preempts the general maritime law cause of action. Of those that have, however, most found that the remedies coexist and supplement each other. Contra, *McPherson v. S. S. South African Pioneer,* 321 F.Supp. 42, 1971 AMC 1096 Sy. (E.D. Va.1971). In *Sennett v. Shell Oil Company,* 1972, AMC 1346, 325 F. Supp. 1 (E.D.La.1971), the court stated:

"Though *Moragne* dealt with the problem of death in coastal waters, which was uniquely complex, nothing in the opinion suggests that the maritime right is to be denied those

whose death is brought about wrongfully on the high seas. As *Moragne* pointed out, the policy implicit in the state and federal wrongful death statutes indicates that recovery for maritime death should be permitted absent "a legislative direction to except a particular class of cases". Congress has not so directed. The Death on the High Seas Act is not an exclusive remedy for those whose relatives perish wrongfully one marine league from shore.' 1972 AMC at 1354, 325 F.Supp. at 7.

The Court in *Sennett* drew analogy to the case of a seaman bringing an action for negligence against his employer. In such a situation, he may sue under both the specific provisions of the federal Jones Act, 46 U.S.Code, sec. 688, as well as the general maritime law.

In *Higginbotham v. Mobil Oil Corporation*, 357 F.Supp. 1164 (W.D.La. 1973), it was expressly held that the congressional provision of statutory relief for death on the high seas does not foreclose judicial allowance of a remedy for such death. The court stated:

'There is dicta in several cases indicating that the wrongful death remedy outlined in *Moragne* * * * might be limited to state territorial waters and that D.O.H.S.A. preempts the field outside that area. *Canal Barge Co., Inc. v. Griffin*, 480 F.2d 11, 1973 AMC 843, (5 Cir. 1973). However, the language of *Moragne* * * * clearly establishes that the action of wrongful death exists in General Maritime Law and there is no indication (even though the accident in that case occurred in the territorial waters of Florida) that the remedy is limited to the territorial waters of the states.'

The representatives of the decedent in *Higginbotham* were held entitled to recover under both DOHSA and the general maritime law.

We rule that in the present action, brought in this Court under its common law jurisdiction, the subject matter, being the alleged wrongful death of the decedent on the high seas, is cognizable by virtue of *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375 [90 S.Ct. 1772, 26 L.Ed.2d 339] 1970 AMC 967 (1970)."

Many courts since *Moragne* in cases brought for wrongful death occurring inside state territorial waters have invoked new elements of damages (*Greene. v. Vantage Steamship Corp.*, 466 F.2d 159 (4 Cir., 1972)) and new classes of beneficiaries (*Hamilton v. Canal Barge Co., Inc.*, 395 F.Supp. 978 (E.D.La. 1975)), different in many respects from those elements of damages and beneficiaries included under the Jones Act, under DOHSA, and under the various state wrongful death acts, thereby inferentially applying general maritime law in such cases. In the landmark case of *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), applying general maritime law to a cause of action arising inside Louisiana's navigable waters, the Supreme Court approved a novel theory of recovery for wrongful death which resulted from injuries received during the decedent's lifetime and for which injuries the decedent had recovered while alive. The Supreme Court noted that practically all state and federal wrongful death statutes barred such recovery, but took the position that the *Moragne* decision demanded that the shape of the new maritime wrongful death remedy be guided by the principle of maritime law which holds that in proceedings in admiralty it is more humane to give than to withhold a remedy. In creating this new wrongful death remedy under the general maritime law, and certainly in indicating that the *Moragne* decision constituted a completely new area of maritime law, Justice Brennan, writing

for the Court, said at 414 U.S. at p. 579, page 812 of 94 S.Ct.:

"To be sure, a majority of courts interpreting state and federal wrongful-death statutes have held that an action for wrongful death is barred by the decedent's recovery for injuries during his lifetime. But the bar does not appear to rest in those cases so much upon principles of *res judicata* or public policy as upon statutory limitations on the wrongful-death action. As one authority has noted, '(t)he fact that all civil remedies for wrongful death derive from statute has important consequences. Since the right was unknown to common law, the legislatures which created the right were free to impose restrictions upon it.' 2 Harper & James, § 24.1, p. 1285. Thus, England's Lord Campbell's Act, the first wrongful-death statute permits recovery 'whensoever the Death of a Person shall be caused by (the) wrongful Act . . . (of another) and the Act . . . is such as would (if death had not ensued) have entitled the Party injured to maintain an Action and recover Damages in respect thereof . . . ' Early English cases interpreting the Act held that this language conditioned wrongful-death recovery upon the existence of an actionable cause of the decedent at his death; if the deceased had reduced his claim to judgment and settled with or released his tortfeasor, and therefore up to the time he died could not have maintained a further action for his injuries, his dependents could have no cause of action for his wrongful death. Since Lord Campbell's Act became the prototype of American wrongful-death statutes, most state statutes contained nearly identical language and have been similarly interpreted by state courts. Though the federal wrongful-death statutes do not contain the same controversial language, the FELA, at least, has been held to be 'essentially identical with' Lord Campbell's Act,

*Michigan C. R. Co. v. Vreeland,* 227 U.S. 59, 69 [33 S.Ct. 192, 195, 57 L. Ed. 417] (1913), and therefore similar restrictions have been placed on FELA wrongful death recovery. *Mellon v. Goodyear,* 277 U.S. 335, 345 [48 S.Ct. 541, 544, 72 L.Ed. 906] (1928). *Moragne,* on the other hand, requires that the shape of the new maritime wrongful-death remedy (not a statutory creation but judge-made, see *The Tungus v. Skovgaard,* 358 U.S. 588, 611, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959) (opinion of Brennan, J.)) be guided by the principle of maritime law that 'certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.' *The Sea Gull,* 21 Fed.Cas. p. 909 (No. 12,578) (C.C. Md.1865), quoted in *Moragne,* 398 U. S. at 387, 90 S.Ct., at 1781. Since the policy underlying the remedy is to insure compensation of the dependents for *their* losses resulting from the decedent's death, the remedy should not be precluded merely because the decedent, during his lifetime, is able to obtain a judgment for his own personal injuries. No statutory language or 'established and inflexible rules' of maritime law require a contrary conclusion."

In a recent opinion written by Judge Richey of the United States District Court for the District of Columbia in *Hammill v. Olympic Airways,* 398 F. Supp. 829, 837 (1975), after a detailed discussion of the opinions in *Moragne* and *Gaudet,* and after reviewing many other cases with issues at least peripherally related to those involved in the instant action, he held that "courts are not bound by the specific provisions of any federal or state statute in fashioning a remedy for maritime wrongful death, including those statutes which might otherwise directly govern the cases before them." Likewise, the opinion by Judge Rubin of the United States District

Court for the Eastern District of Louisiana in *Hamilton v. Canal Barge Co., Inc.*, 395 F.Supp. 978 (1975), lends additional support for this court's conclusion that based upon the *Moragne* decision, there now exists a cause of action for wrongful death under general maritime law whether said cause of action arises on the high seas or inside state territorial waters.

■ Having reached the aforesaid conclusion, the final question facing this court here is the time limitation applicable in a cause of action for wrongful death brought under the general maritime law. Such action being in admiralty, it has long been held that the timeliness of a complaint in admiralty is not to be determined solely by reference to, and a mechanical application of, a specific statute of limitations; rather, the timeliness of such actions must be determined in admiralty cases by applying the equitable doctrine of laches, and in applying this theory analogous state and federal statutes of limitation should be considered, but not necessarily found to be controlling. No conclusive presumption arises from the expiration of any statutory period of limitation, as the peculiar equitable circumstances of each case must be considered, and the court, in deciding this issue, must examine the excuse for delay in instituting an admiralty action and any special prejudice to a defendant as a result of such delay. When there has been no inexcusable delay in seeking a remedy in admiralty, and no unusual prejudice to the defendant has ensued from the mere passage of time, relief should not be barred by strict adherence to a particular statute of limitations. *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); *Hill v. W. Bruns & Co.*, 498 F.2d 565 (2 Cir. 1974); *Finley v. United States*, 244 F.2d 125 (3 Cir. 1957); *Construction Aggregates Corp. v. S. S. Azalea City*, 399 F.Supp. 662 (D.N.J.1975); and *Meyer v. Moore-McCormack Lines, Inc.*, 398 F. Supp. 553 (E.D.N.Y.1975).

■ Not only does this court agree with the authorities which recognize that there should be no strict statute of limitation applicable to an action in admiralty brought under the general maritime law, but this court is of the opinion that it would be unjust and inappropriate to borrow a particular statute of limitation from a wrongful death act and apply such limitation period directly to a general maritime suit for wrongful death. Since the various courts in determining damages in *Moragne*-type cases have not adhered to the same elements as provided by the Jones Act, DOHSA, or a particular state wrongful death action, it would seem equally as inappropriate to borrow, without recognizing other equitable considerations, a strict limitation period from any such acts.[1] Furthermore, if courts were to adopt DOHSA or Jones Act limitations for wrongful death actions on the high seas, and state wrongful death act limitations for actions inside state territorial waters, an imaginary line where state territorial waters end would be produced, and the rights of beneficiaries of persons whose wrongful deaths were caused by violation of maritime duties would be adjudged solely by the side of this line on which the maritime duty was violated, and this court feels that it would be improper and illogical to create such an anomaly.

■ Having reviewed the uncontroverted affidavit filed by the plaintiff herein, and it appearing therefrom that the defendant was advised of the plaintiff's intestate's death immediately upon the occurrence thereof, and that the defendant promptly investigated the cir-

[1]. Even those courts which have adopted the use of a strict limitation statute, such as DOHSA, in wrongful death cases arising under general maritime law, refuse to apply such limitation if there is justification for delay. *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670, 683 (2 Cir. 1971); cf., *Francis v. Pan-American Trinidad Oil Co.*, 392 F.Supp. 1252, 1257 (D.Del., 1975).

cumstances of such death and had the benefit of a similar investigation by the United States Coast Guard, and it further appearing that the defendant does not contend that it has been prejudiced by the delay in bringing the instant action, this court has determined that to allow this suit to be brought will cause no unusual harm or prejudice to the defendant. Additionally, from the facts set forth in the aforesaid affidavit submitted by the plaintiff, this court finds that the delay in instituting this litigation was occasioned, to a large extent, by the deceased's unusual marital situation and by attempts to settle the case between attorneys representing the defendant and different attorneys representing two alleged widows, and this court has concluded, under these circumstances, that the delay here involved is excusable. For the aforementioned reasons and following the long-established legal principle that special solitude should be exercised by the court for the welfare of seamen who venture upon hazardous and unpredictable sea voyages, this court has thus concluded that the doctrine of laches does not bar the instant case brought under the general maritime law. Therefore, it is

Ordered, that the motion of the defendant to dismiss this action, be, and the same hereby is, denied.

This court is of the opinion that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of this litigation. Permission is, therefore, granted by this court to the defendant, if it be so advised, to petition the Court of Appeals for the Fourth Circuit to allow an appeal from this Order in accordance with 28 U.S.C., Section 1292(b) and Rule 5 of the Federal Rules of Appellate Procedure.

It is further ordered, that further proceedings in · this cause, be, stayed, pending a determination by the defendant, within the time required by law, as to whether it shall seek an interlocutory appeal of this Order, and whether, if sought, such appeal is granted by the Fourth Circuit Court of Appeals.

And it is so ordered.